## THE STATE v. C. T. GUYE, Appellant.

### Division Two, June 11, 1923.

1. **EVIDENCE: Suspicion: Repeated to Defendant.** Where defendant was being tried for carnal-knowledge of a girl under fifteen years of age committed in July, 1919, testimony by a witness that in May or June, 1920, he told defendant that defendant's deceased landlord had remarked to him that the girl was going to defendant's place of business too often and had asked the witness if he had noticed it, and that he had told the landlord that he had not; that the landlord at that time was at "outs" with defendant, and that, when he told defendant what the landlord had said, defendant said it was none of the landlord's business, was not competent to prove the charge that defendant had committed the crime of rape ten or eleven months previously. The landlord's suspicions were not evidence, and the defendant's statement to the witness, that it was none of his landlord's business, was not an admission of guilt and had no tendency to connect him with the crime committed in July, 1919; but being admitted, over objection, with the sanction of the court, may have been harmful to defendant.

2. ————: **Subsequent Transactions of Defendant.** The defendant was being prosecuted for the crime of carnal knowledge of a girl under fiifteen years of age, committed in July, 1919, and a physician was permitted to testify that, in March, 1920, he was treating the girl for tonsilitis, and that defendant told him that he had left some fruit with the girl, that she had sent defendant word not to come to see her again while she was sick, as it might cause talk in the neighborhood, and that he (defendant) had sent her word that he would not come again while she was sick if it was embarrassing to her. *Held*, that the conversation related wholly to matters occurring long subsequently to the alleged crime, and was therefore improperly admitted, and well calculated to excite prejudice in the minds of the jurors against defendant.

3. **DIFFERENT OFFENSES: Motion to Elect: Before Trial.** Where the information charges, in nine separate counts, the defendant with nine separate acts of carnal knowledge of the same girl, each exactly alike except as to the dates of the alleged assaults, there can be but one conviction, regardless of the nine counts pleading nine separate and distinct offenses; and defendant's motion, filed before the commencement of the trial, to compel the State to elect upon which count of the information it will proceed to trial and to dismiss the other eight counts, should be sustained.

State v. Guye.

4. **EVIDENCE: Prior and Subsequent Acts.** Where defendant, in nine separate counts, was charged with nine separate assaults upon the same girl, and at the close of its evidence the State elected to stand upon the seventh count, evidence to sustain the assaults charged in the preceding assaults, alleged to have taken place prior to the date fixed in the seventh count, was admissible. But evidence of assaults committed subsequently to the date fixed in said seventh count was ·incompetent and should have been excluded.

5. ———: **Subsequent Assaults: After Prosecutrix Reached Fifteen Years of Age: Elicited by Cross-Examination.** Prosecutrix was fourteen years of age in April, 1919, and the information, in nine separate counts, charged defendant with carnal knowledge of her on nine different dates in June and July, 1919, and the State, at the close of its case, elected to stand on the seventh count, which charged that the crime was committed on July 20, 1919. On cross-examination she was asked, by way of impeachment, if she had not testified before the grand jury that the first act of sexual intercourse occurred in 1920, and she answered that she had, and it is clear that she committed perjury, either in her testimony before the grand jury, or in her testimony at the trial, that the first act of sexual intercourse was in June, 1919. *Held*, that testimony of assaults committed after the one alleged in the said seventh count was incompetent, and said testimony was not elicited by defendant by said cross-examination. which was not an inquiry whether defendant had had sexual relations with her in June, 1920, but whether she had committed perjury in her testimony before the grand jury; and it was error to permit prosecutrix to testify that defendant had sexual intercourse with her in June and July, 1920, after she had reached fifteen years of age.

6. ———: **Sexual Relations With Others: Impeachment.** Testimony of other men that they had sexual intercourse with prosecutrix after the date mentioned in the information is incompetent, and should be excluded. Her character cannot be attacked by specific acts of delinquency.

7. ———: **Knowledge That Grand Jury Had Failed to Indict: Motive for Changing Testimony.** The prosecutrix admitted that, shortly before appearing before the grand jury, she went to see defendant with the view of collecting $3,000 from him; and testified that she did not ask him for money, but asked him to do something for her, and that upon his refusal she went before the grand jury and tried to have him indicted for having carnal knowledge of her in June, 1920. As she was fifteen years of age in April, 1920, to sustain an indictment it would have been necessary for the State to show that she was of previous chaste character in June, 1920, when, according to her testimony before the grand jury,

the assault was committed. No indictment being returned, and an information being filed she testified at the trial and the information charged that the sexual acts occurred in June and July, 1919. *Held*, that the defendant had a legal right to inquire into her motives for changing front, and to ask her on cross-examination if she knew that the grand jury had failed to indict defendant, and it was error to exclude such inquiry.

8. **RAPE: Sufficient Evidence to Convict: Appellate Practice.** While it is true that a conviction for rape may be sustained upon the uncorroborated evidence of the female alleged to have been outraged, the appellate court will nevertheless closely scrutinize the testimony upon which the conviction was obtained, and if it appears incredible and too unsubstantial to form the basis of a judgment will reverse the judgment.

9. ———: **Uncorroborated Untruthful Prosecutrix: Defendant of Good Reputation.** The information charges nine separate and distinct acts of carnal knowledge with prosecutrix when she was only a few months over fourteen years of age, occurring, three one week apart in June, and six from three to seven days apart in July, in the back room of defendant's jewelry store, and the nine acts were described by her in the same set formula, which bears on its face earmaks of special previous preparation to meet the charges. She had previously testified, before a grand jury which had failed to indict, that the assaults were committed a year later, when she was over fifteen years of age and to sustain an indictment it would have been necessary for the State to show she was at the time of previous chaste character, and her testimony shows audacious perjury, either at the trial or before the grand jury, and she frequently admitted on cross-examination at the trial that her testimony before the grand jury that the assault occurred a year later than the information charges was false and known by her to be untrue, and that her deposition contained numerous mistakes. There were no substantial corroborating circumstances to sustain her testimony at the trial; and although shown to be a girl of unusual brightness, and in the second year of high school, she testified that she thought her various sexual relations with defendant were not wrong, but perfectly right. Defendant denied that he had ever had sexual intercourse with her at any time, and numerous witnesses testified that his reputation for morality was good, but no witness testified that her reputation for truthfulness or morality was good. *Held*, following the rule that defendant is presumed to be innocent and that this presumption attends him until it has been overcome by evidence proving his guilt beyond a reasonable doubt, that a verdict of guilty cannot stand, unless, upon a re-trial, additional evidence tending to establish defendant's guilt is produced.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt,* Judge.

REVERSED AND REMANDED.

*Hostetter & Haley, R. D. Rogers, J. W. Buffington, G. C. Huston* and *R. L. Sutton* for appellant.

(1)  The admission of the testimony of Clemison and Dr. Compton is manifestly reversible error; the witnesses were permitted to detail conversations with defendant, the subject-matter of which related to acts of familiarity between defendant and the prosecutrix tending to raise an inference or suspicion of sexual acts between them long subsequent to the time of the offenses charged in the information.  State v. Palmberg, 199 Mo. 242; State v. Harris, 283 Mo. 113; State v. Crowley, 13 Ala. 172; Lovell v. State, 12 Ind. 18; State v. Markins, 95 Ind. 464; People v. Clark, 33 Mich. 112; People v. Fowler, 104 Mich. 449; People v. Freeman, 25 App. Div. 283, 50 N. Y. Supp. 984; People v. Robertson, 84 N. Y. Supp. 401; State v. Cook, 4 Penn. (Del.) 31; State v. Neel, 23 Utah, 541; State v. Acheson, 91 Me. 244; People v. Abbott, 97 Mich. 484; State v. Stevens, 56 Kan. 722. (2)  The admission of evidence of lascivious familiarity of the defendant with the prosecutrix, such as caressing and hugging and kissing her and fondling her private parts, long prior to the offenses charged in the information is likewise reversible error.  State v. Harris, 283 Mo. 113; State v. Foster, 225 S. W. (Mo.) 672.  Evidence of other acts of intercourse, whether prior or subsequent to the time of the offense charged in the information, is excluded by the courts on the ground that such acts do not tend to prove the offense charged and not on the ground merely that such acts are separate and distinct offenses, for it is well established law that when evidence is admissible for any purpose in the specific charge on trial, such evidence will not be excluded merely because

it may also prove the commission of another crime. State
v. Banks, 258 Mo. 593; State v. Gordon, 253 Mo. 516;
State v. Spaugh, 200 Mo. 594; State v. Collins, 181 Mo.
260. (3) The court erred in refusing to require the
State to elect upon which of the offenses charged in the
information it would go to the jury, at the commencement
of the trial, and erred in permitting the State to prove
subsequent offenses, after having proved one offense.
It is the duty of the prosecuting officer where more than
one offense is charged in the information to inform the
defense upon what specific offense he intends to rely,
at the commencement of the trial, and if he does not do
so the first evidence which tends in any degree to prove
an offense will be deemed an election so as to exclude
evidence of any subsequent offense. Pope v. State, 137
Ala. 56; People v. Williams, 133 Cal. 165; State v. Ste-
vens, 56 Kan. 720; State v. Acheson, 91 Me. 246; State
v. Bonsor, 49 Kan. 758; People v. Flaherty, 162 N. Y.
532; State v. Hilberg, 22 Utah, 27; State v. Haux, 109
Mo. 654; State v. Carragin, 210 Mo. 371. (4) Permit-
ting the prosecuting witness to testify in answer to
the questions propounded by special counsel for the
State that the testimony before the grand jury that the
defendant had intercourse with her twice in June and
July, 1920, was true, is clearly reversible error. This
was permitting the witness to testify to sexual acts
performed upon her by the defendant which transpired
not only subsequent to the acts charged in the informa-
tion, but also subsequent to her attainment of the age
of consent. There was nothing in the cross-examination
of the prosecutrix by defendant's counsel which justified
the admission of such testimony on re-direct examination
by State's counsel. Authorities under Point 1. (5)
Procuring the witness Clemison to state that he had a
conversation with Harbaum, and procuring the witness
to say he afterwards told the defendant that Harbaum
told him, the witness, that the prosecutrix was going
into the defendant's place of business too often, was a

vicious and malignant. effort on the part of the counsel to convey to the minds of the jury the impression that Harbaum had actually told the witness what the witness told the defendant and necessarily conveyed that impression to the minds of the jury, and the examination was manifestly designed for that purpose and no other. (6) The court erred in excluding the evidence of other acts of intercourse by the prosecuting witness with four or five boys, after she arrived at the age of consent, as preserved in their depositions. Such evidence was clearly competent as affecting her credibility as a witness. Where a girl over the age of consent has become so morally depraved as to gather up boys off the streets and take them to barns and sheds and hold carnivals of sexual indulgence with them in gangs, the defendant has a right to have such fact shown to the jury as affecting her credibility when she offers herself as a witness against him in a case of this character. Begliben v. State, 151 S. W. (Tex. Crim.) 1044; State v. Biggs, 45 Mont. 404; Herzig v. Sandbury, 172 Pac. (Mont.) 132; State v. Ferbrade, 206 Pac. 617. (7) The testimony of the four boys as to their acts of intercourse with the prosecutrix in June and July, 1920, after the prosecutrix was over the age of consent, was competent on the further ground that such acts tended to account for her condition, which she so frequently volunteered to mention in giving her testimony, and which she "laid on" defendant, when he refused to produce the money required by her as the price of not having it "laid on" him. Such evidence was peculiarly material and vital in view of the fact that the prosecutrix was permitted to testify over the objection of defendant's counsel that defendant had intercourse with her in June and July, 1920, leaving the jury to draw the inference that such alleged acts of intercourse with her by defendant were responsible for her "condition," with which "condition" she so cunningly interspersed her testimony. State v. Whitesell, 142 Mo. 470; State v. Apley, 25 N. D. 298;

State v. Height, 117 Iowa, 650; Shoemaker v. State, 58 Tex. Crim. 518; Bice v. State, 37 Tex. Crim. 38; Knowles v. State, 44 Tex. Crim. 322; Parker v. State, 62 Tex. Crim. 64; People v. Currie, 14 Cal. App. 67; Kanert v. State, 92 Neb. 14; People v. Flaherty, 79 Hun, 48; Nugent v. State, 18 Ala. 521; State v. Hobson, 177 S. W. (Mo.) 377. (8) The court erred in excluding the cross-examination of the prosecuting witness as to her knowledge that the grand jury had failed to indict defendant at the time she made the fresh charges against him for sexual acts said to have occurred in 1919, before she had reached the age of consent, and erred in excluding her evidence that she had such knowledge at the time she made such fresh charges. It is always competent to show a motive for the testimony of a witness. (9) The testimony of the prosecutrix was thoroughly discredited by contradictory statements made by her, both judicial and extra-judicial, as well as by her criminal conduct in avoiding the giving of her testimony before the notary public and her manifest zeal for the conviction of the defendant exhibited at the trial, and her demand upon defendant for the payment of $3000 as the price of escaping her accusation, and where the testimony of the prosecutrix is thus discredited the rule in this State requires that her testimony must be corroborated to authorize conviction. State v. Donnington, 246 Mo. 355; State v. Tevis, 234 Mo. 384; State v. Goodale, 210 Mo. 290; State v. Brown, 209 Mo. 413; State v. Hobson, 177 S. W. (Mo.) 376; State v. Hughes, 258 Mo. 272; State v. Seay, 282 Mo. 279. And where the state of the evidence is such as to invoke this rule requiring corroboration, the refusal of the court to instruct the jury that corroboration is necessary to authorize a conviction is universally held to be reversible error. Edwards v. State, 69 Neb. 389; People v. Benson, 6 Cal. 221; People v. Biglizen, 112 N. Y. App. Div. 225; State v. Blackburn, 110 N. W. (Iowa) 275; State v. Carnagy, 106 Iowa, 483; McConnell v. State, 77 Neb. 773; People v. Biglizen, 185

N. Y. 616; Barnett v. State, 83 Ala. 40; Monroe v. State, 71 Miss. 196. (10) The evidence is wholly insufficient to support the verdict, and the court ought to have sustained the defendant's demurrer to the evidence. The heinousness of the crime charged and the strong feeling against the person accused of such crime, independent of the question of guilt or innocence, have such an influence against the person on trial that courts in a spirit of caution, born of experience, closely examine and scrutinize the testimony upon which a conviction has been secured, and when the evidence of the prosecutrix is of a contradictory nature, or is discredited by previous contradictory statements of the prosecutrix, or when applied to the admitted facts in the case, her testimony is not convincing, but leaves the mind of the court clouded with doubts, she must be corroborated, or the judgment cannot be sustained. State v. Donnington, 246 Mo. 355; State v. Tevis, 234 Mo. 284; State v. Brown, 209 Mo. 420; State v. Goodale, 210 Mo. 282, 289; State v. Hobson, 177 S. W. (Mo.) 376; State v. Hughes, 258 Mo. 272; State v. Matsinger, 180 S. W. (Mo.) 857; State v. Horton, 247 Mo. 666; State v. Volz, 269 Mo. 205; State v. Manuel, 263 Mo. 675.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) · An accused may be charged in an information is separate counts with several charges of rape upon the same female and the State may not be compelled to elect on which count it will proceed to trial. State v. Carragin, 210 Mo. 351, 359; State v. Harris, 283 Mo. 99, 112. No exception was saved to the action of the court in overruling the motion to elect and the point, if error, is not reviewable. State v. Little, 228 Mo. 273, 296; State v. Shellman, 192 S. W. 435, 436. (2) Since there were charges in the information of nine different acts of intercourse it was proper to admit testimony as to each act charged. State v. Harris, 283 Mo. 99, 112. (3) Evi-

dence as to subsequent acts of intercourse was elicited by appellant and he is estopped to complain of the error. State v. Kring, 74 Mo. 612, 631; Sec. 3908, R. S. 1919; State v. Massey, 274 Mo. 578, 592; State v. Palmer, 161 Mo. 152, 175; State v. Goddard, 162 Mo. 198, 226. (4) Evidence of offenses committed prior to any date alleged in the information and which amount to an assault, constitutes reversible error. State v. Harris, 283 Mo. 99, 112. (5) To lay the foundation for the impeachment of a witness by reason of extra-judicial contradictory statements, not only the time that the extrajudicial statement was made, but the place and circumstances must also be stated. State v. Starr, 38 Mo. 270, 279; State v. Devorss, 221 Mo. 469, 475; Kelly's Crim. Law. (3 Ed.) sec. 385. (6) A witness may not be impeached by evidence of specific acts of misconduct. State v. Grant, 49 Mo. 113; State v. Haux, 109 Mo. 663; State v. Gesell, 124 Mo. 531, 535; State v. Hulbert, 228 S. W. 501. (7) What an accused may say extra-judicially in response to an inquiry about his relations with a prosecuting witness is competent and the admission of it is not a violation of the hearsay rule. (8) The prosecuting witness in a statutory rape case may not be impeached by evidence which.tends to prove specific acts of unchastity, and in such cases the unchastity of the prosecuting witness is not defensive. State v. Grant, 49 Mo. 113; State v. Haux, 109 Mo. 654, 663; State v. Devorss, 221 Mo. 469; 22 R. C. L. par. 46, p. 1211. (9) The court erred in excluding the cross-examination of the prosecuting witness as to her knowledge that the grand jury had failed to indict the appellant at the time she made the charges against him upon which he was being prosecuted. (10) Where there is evidence upon which to base a verdict the Supreme Court will not disturb it.

RAILEY, C.—An information was filed in the Circuit Court of Warren County, Missouri, containing nine counts, in each of which defendant was charged with the

crime of rape, in that, on the 12th, 19th and 26th days of June, 1919, and on the 6th, 10th, 17th, 20th, 24th and 31st days of July, 1919, he committed statutory rape upon Edith Leek, a female child, under the age of fifteen years, in Warren County aforesaid, on each of above dates.  At the instance of defendant, the venue was changed and the cause sent to Audrain County, Missouri, and tried there before a jury.  On September 9, 1921, the jury returned the following verdict:

"We, the jury, find the defendant guilty as charged in the seventh count of the information and we assess his punishment at imprisonment in the State Penitentiary for a term of five years."

·On September 5, 1921, appellant filed a motion to require the State to elect upon which of the nine counts it would proceed to trial, and to dismiss the remaining eight counts of the information, which said motion was overruled on the following day, and an exception saved as to said ruling.  On September 7, 1921, at the conclusion of the State's evidence in chief, defendant's counsel filed a second motion to require the State to elect on which of said nine counts it would proceed to trial and to dismiss the remaining eight counts.  Said motion was sustained, and the State elected to stand upon the seventh count, which charges, in substance, that on July 20, 1919, in Warren County, Missouri, said defendant committed statutory rape upon Edith Leek, a female child under the age of fifteen years, to-wit, of the age of fourteen years.

Respondent's evidence tends to show that said Edith Leek was born on April 1, 1905; that her father and mother died shortly after her birth, and she was raised by her grandfather and grandmother.  Edith Leek testified in substance that she was sixteen years of age, at the date of trial in September, 1921, and lived with her grandparents, Edward and Elizabeth Leek, at Warrenton, Missouri; that she moved to Warrenton with her grandparents, when she was about six years of age; that

defendant ran a store at Warrenton, and she had known him for about four years before the trial; that he was in the Yocum building, and moved from there to the Harbaum building in Warrenton; that while in the Yocum building, he also conducted a jewelry business; that he moved to the Harbaum building in May, 1919, and was then engaged in the jewelry business; that while located at the Yocum building, defendant gave her small pieces of money, candy, bananas and small pieces of jewelry; that he always told her he liked her; that he loved her better than he did his wife, and called her sweetheart; that he kissed her, hugged her and felt of her private parts; that this occurred at intervals before he moved from the Yocum building, depending on whether any one was present; that the Harbaum building was about two blocks east of the Yocum building; that Wm. Harbaum, the owner of said building, lived one door west of same, but was dead at the time of trial; that she (witness) at that time lived on West Main Street with her grandparents, about three blocks northwest of the Harbaum building, and about two blocks northwest of the Yocum building; that she went to defendant's place of business after he moved to the Harbaum building, to take a wrist watch for repairs, which defendant had given her grandfather for her; that about June 12, 1919, she went for her watch, and defendant offered her some ribbon and invited her into the back room, where he cut off some ribbon; that he sat down in a chair, and told her to sit down, in his lap, and she did so; that he hugged and kissed her, felt of her private parts, told her to unbutton her clothes, sit on a box, and he would do business, by having sexual intercourse with her; that prior to the above date, defendant had taken her into the back room, would have her sit on his lap, hug and kiss her, and feel of her private parts with his fingers; that he would put one finger in, move it around, and then would put two fingers in; that on June 12th, defendant lifted her on to the box; that he then unbuttoned his pants, put his penis in her

private parts, and held her legs up with his hand; that
he did not get all of his penis in, and stopped, because
she hallooed; that she cried *"ouch" and he stopped;* that
he then took his handkerchief, wiped her and himself,
and buttoned up his pants; that he gave her a half dollar
as she left, and set a day for her to come back; that she
then went back at intervals of about a week; that the
second time she came was about June 19, 1919, when she
went to see if her watch was repaired; that she then
went to the back room of defendant, sat in his lap, was
kissed and hugged; that he felt of her private parts, and
had her unbutton her clothes, set her on the box, and had
sexual intercourse with her; that he then put his penis
into her private parts a little farther than he did before,
but she said *"ouch"* and he *quit;* that she was in the
same position as before, and he was holding her legs
around his waist; that he quit when she said "ouch,"
wiped her with his handkerchief, put it in his pocket, and
walked out; that he gave her a half dollar, told her good-
bye, and set a date for her return; that she returned
again on June 26, 1919, and defendant went through the
same performance, as he did on the 19th, *except* that his
penis went all the way into her private parts; that she
remained about five minutes, after which he wiped her
private parts; that he then told her to button up her
clothes and come into the main room; that there was a
discharge from him on this occasion, as she saw it drip on
the floor; that he then gave her a half dollar, and told
her to come back on a certain date; that on July 6, 1919,
he had intercourse with her by penetrating her private
parts; that he gave her a half dollar, and an extra dime
for the sunday school collection; that he told her not to
tell anyone he had given her money, and told her to come
back soon; that she then went back on July 10, 1919,
and he had sexual intercourse with her as he did on
July 6, 1919; that he then gave her a half dollar; that
on July 17, 1919, defendant had sexual intercourse with
her at the same place, and gave her a half dollar; *that*

*about July 20, 1919,* he had sexual intercourse with her and gave her a half dollar; that on July 24, 1919, he had sexual intercourse with her and gave her a half dollar; that on July 31, 1919, he had sexual intercourse with her and gave her a half dollar; that her grandfather told her while she was at defendant's place of business looking at the jewelry to go home, and she did so; that defendant told her, her grandfather was suspicious of them, and for her to slip in, but not so often; that defendant gave her a ring and a pin before the 12th of June, 1919; that he told witness not to tell what had occurred between them; that he and his wife had not slept together for two years; that his wife did not love him, would not kiss him, and that he liked her better than his wife.

On cross-examination Edith Leek, testified, in substance, that she gave her deposition in this case, and testified therein that defendant used a black shawl on the box where they had intercourse, instead of the red shawl she described at the trial; that at the suggestion of her counsel, she left home for five or six weeks to keep the defendant from taking her deposition; that she did not tell her grandparents where she was going, nor did her attorney tell them; that her attorney took her away in his automobile, and she acted on his advice; that he brought her back home; that she corresponded with her grandparents while she was gone, by sending the letters to her attorney. She testified to a number of things in her deposition, which she admitted at the trial were untrue; that she discovered the mistakes when she read her deposition over before the trial; that she was sworn as a witness before the grand jury, and was before that body, all-told, about seven hours; that she never testified before the grand jury *to any of the acts of intercourse which she testified at the trial took place in June and July, 1919;* that she swore before the grand jury her *first* act of sexual intercourse with defendant was in *June, 1920,* and at the trial testified the above was un-

true. When asked why she swore to an untruth before the grand jury, she gave as a reason that she was ashamed to tell any more before a "bunch of men." She admitted there were not so many in the grand jury room .as there were at the trial; that no ladies were present ;before the grand jury. Witness further testified on cross-examination:

"Q. And during all this seven-hour examination you always spoke about it repeatedly that the first act of sexual intercourse between you and the defendant that you claimed was in June, 1920? A. Yes, sir.

"Q. And you know that was false at the time, didn't you? A. Yes, sir.

"Q. And yet you wilfully testified to it, didn't you? A Yes, sir.

"Q. And repeatedly testified to it, didn't you? A. Yes, sir.

"Q. You wanted them to believe it, didn't you? A. Yes, sir.

"Q. And isn't it a fact that you further told this grand jury that there were only two acts of sexual intercourse between you and Mr. Guye and both of them was in 1920, June and July, 1920, isn't that a fact? A. Yes, sir.

"Q. That was false, wasn't it? A. Yes, sir.

"Q. And you testified to it knowing it was false, didn't you? A. Yes sir. . . .

"Q. And yet you knew it was false when you were saying it? A. Yes, sir.

"Q. And yet you wanted to compel or to induce them to believe that what you were swearing to was true, didn't you? A. Yes, sir.

"Q. Why did you so want them to believe a falsehood? A. Well, I thought the less I would tell the less embarrassment it would be on me.

"Q. Did you think it would be less embarrassing to tell about two acts of sexual intercourse in 1920 than

it would nine in 1919? If so, why would it be any less embarrassing? A. Because it was more acts.''

Witness admitted that she told her counsel and the prosecuting attorney, before she appeared before the grand jury, that she *only had two acts* of sexual intercourse with defendant, and they occurred *in June and July, 1920*. She further testified:

''Q. Didn't you have three conversations with Doctor DeVeraux and tell him a different story every time and didn't he so tell you? A. Yes, sir.

''Q. Well, you told him a different story each time? A. Yes, sir. . . .

''Q. And he told you that you had deceived him; you hadn't told him the truth? . . . A. He furthermore said that I was a liar. . . .

''Q. Every one of the three different stories that you told Doctor DeVeraux were untrue, weren't they? A. Yes, sir.''

She admitted that she went to see defendant with the view of getting from him $3,000, but did not ask him for the money (this occurred before she testified before the grand jury); that defendant told her he would do nothing; that when she had the alleged acts of intercourse with defendant she thought there was nothing wrong about it; that she never told anyone about the alleged acts of intercourse with defendant in 1919, until after the grand jury had investigated the matter; she was in the second year of the high school.

Over the objection of defendant, the witness was permitted to testify that she had sexual intercourse with defendant in June and July, 1920.

Mrs. William Harbaum testified, in substance, that in 1919 she lived right next to defendant's place of business; that she knew Edith Leek, and saw her frequently; that she saw Edith go into defendant's place of business, after she had delivered milk to witness, and saw her go there one Sunday morning in June or July, 1919; that she did not see defendant through the window as it was

closed. On cross-examination, witness fixed the above date in *1920* instead of 1919, in stating what she saw.

Dr. C. S. Compton testified that, in *March, 1920,* he treated Edith Leek for tonsilitis. Over the objection of defendant, he was permitted to testify that in the latter part of *March, 1920,* defendant told him he had left some fruit with Edith, and she had sent him word not to come to see her any more while she was sick, as it might cause talk in the neighborhood; that he sent her word he would not come again if it was embarrassing to her while she was sick.

R. S. Clemison, over the objection of defendant, was permitted to testify that in *May or June, 1920, he* told defendant that Harbaum, who was then dead, had remarked to him that he thought the little Leek girl was going to defendant's place of business too often. Defendant said it was none of his business. On cross-examination, it appears, that Harbaum was at-outs with defendant for leaving his building.

The State having rested, defendant interposed a demurrer to the evidence, which was overruled, and thereupon, at the instance of defendant, the State was required to elect on which of the nine counts in the information it would proceed, and stood upon the *seventh* count of same. The court then announced, that the above ruling automatically disposed of the remaining eight counts of the information. .

The following witnesses testified to defendant's general reputation for being a good citizen, of good morals, chastity, etc., to-wit: Dr. T. B. Carr, John Hohstadt, E. B. Morrison, Robert McReynolds, Charlie Richardson, Charles Knipmeyer, Mrs. Charles Richardson, W. H. Drunert, C. W. Fawse, Fred C. Tuttle, H. C. Knigge, R. S. Warren, V. L. Delventhal, C. M. Hill, Cecil Wahl, Dick Humphrey, Joe W. Luton, Paul Wild, Garrett Lewis and George E. Hackman.

Defendant C. T. Guye, testified, in substance, that he lived in Warrenton and was sixty-two years old; that

he never had sexual intercourse with Edith Leek; that he never hugged, kissed, fondled or played with her; that he never gave her a pin or a ring; that he did not have the conversation with Dr. Compton, which the latter testified about; that there was no curtain hung on a pole in the Harbaum building while he was there; that he did not see any black or red shawl in the building while he was there; that he did not give Edith a wrist watch; that he sold a wrist watch to Edith's grandfather, which the latter gave to her; she brought the watch there for repairs; that it was sent to a material house and was never returned; that he never gave her any beads or jewelry of any kind.

The depositions of several boys, whose ages ranged from twelve to fifteen years, were offered in evidence, in which they testified about having sexual intercourse with Edith Leek in the summer of 1920, and frequently, on her invitation, while more than one of the boys were present.

Defendant's demurrer to the evidence at the close of the whole case was overruled.

The instructions and rulings of the court, as far as necessary, will be considered in the opinion.

I. Appellant complains of the court's action in permitting witness Clemison, over the objection of defendant, to testify as follows: "I told Mr. Guye that Harbaum had remarked to me that he thought the little Leek girl was going in his place too often and asked me if I had noticed it, and I told him that I had not." Guye answered that it was none of Harbaum's business.

**Suspicion.**

It appears from the record that the above conversation was in May or June, 1920, and that Harbaum, at that time, was at "outs" with defendant. Suppose Harbaum had been alive, at the time of trial, and the State had asked him, as a witness, if he told defendant in May or June, 1920, that he (Harbaum) thought the little Leek girl was going to defendant's place of business too often,

would Harbaum's mere opinion, based on suspicion in May or June, 1920, tend to show that defendant, in June or July, 1919, had raped Edith Leek, in the absence of any admission as to his guilt? We think not, and especially so, as Clemison repeated to defendant what Harbaum had said, and appellant told him it was none of Harbaum's business. Harbaum's suspicions were not evidence in the case, and defendant's answer to Clemison, in respect to same, had no tendency to connect him with the alleged rapes in June and July, 1919. We are of the opinion, that the above testimony was not only incompetent, but having gone to the jury, over defendant's objection, with the sanction of the court as to its relevancy, it may have been harmful to defendant and should have been excluded.

II. Over the objection of defendant, the court permitted Dr. C. S. Compton to testify that, about the 22nd of March, 1920, defendant told him he had heard that Edith Leek was sick, wanted to know how she was getting along (as the doctor had treated her for ton-silitis), and said he had left some fruit for her; **Subsequent Acts.** that she had sent him word not to come to see her any more while she was sick, as it might cause talk in the neighborhood; that he sent her word he would not come again if it was embarrassing to her while she was sick, etc. The defendant denied that he had any such conversation with Dr. Compton.

The acts complained of in the information are alleged to have taken place in June and July, 1919. The above conversation is said to have occurred on March 22, 1920, and there is nothing therein to indicate that defendant had raped the prosecutrix the year before. If the above evidence had any probative force whatever, in respect to the conduct of defendant and the prosecutrix, it related to transactions that occurred long subsequent to the dates of the alleged rape and, hence, was improperly admitted as evidence. [State v. Harris, 283 Mo. l. c. 113; State v. Johnson, 225 S. W. (Mo.) l. c.

964; State v. Foster, 225 S. W. (Mo.) l. c. 673; State v. Palmberg, 199 Mo. l. c. 242.] The admission of this testimony was well calculated to create a prejudice in the minds of the jurors against defendant, and had no tendency to establish the charges of rape, which are alleged to have occurred the preceding year.

III. Before the commencement of the trial the defendant filed the following motion:

"Now comes the defendant, C. T. Guye, and shows to the court that he stands charged by the information filed in the above entitled cause with nine separate and distinct felonies alleged to have been committed upon nine separate and distinct dates. Defendant further says that he is entitled to know before proceeding to trial upon which count of said information the State will proceed to trial, and defendant asks the court to require the State to elect upon which of said nine counts in said information it will proceed to put him on his trial and to dismiss the other eight counts of said information."

Motion to Elect: Before Trial.

The above motion was overruled, an exception saved, and the action of the court in overruling same is assigned as error.

The nine counts of the information are exactly alike, except as to dates of alleged assaults. Each count constituted a separate and distinct crime. [State v. Palmberg, 199 Mo. l. c. 240, and State v. Henderson, 243 Mo. l. c. 508.] The law in this State is well settled to the effect that there could have been but one conviction, regardless of the nine counts pleaded in the information. [State v. Carragin, 210 Mo. l. c. 362; State v. Porter, 26 Mo. 201.] Under the circumstances, we are of the opinion that the State should have been put to its election before the commencement of the trial as to which count it would proceed under.

IV. The State elected this case, at the conclusion of the evidence, to stand on count seven of the informa-

tion, which charged defendant with raping the prose-
cutrix on or about July 20, 1919. In counts 1, 2, 3, 4, 5
and 6 defendant was charged with raping the
prosecutrix in June and July prior to the date
alleged in count seven supra. Over the ob-
jection of defendant, the State was permitted to offer
evidence as to each of the six charges of rape, alleged to
have taken place prior to the date fixed in count seven
aforesaid, and the above ruling is assigned as a ground
of error here.

*Evidence of Prior Acts.*

The conclusions reached by the author of this opin-
ion in State v. Harris, 283 Mo. 99, and State v. Johnson,
225 S. W. l. c. 964-5, as to prior acts of statutory rape
being incompetent evidence, are directly overruled by
this Division in State v. Carl Cason, 252 S. W. 688,
decided April 9, 1923, not yet officially reported, in an
opinion by WHITE, J., in which all the judges concurred.
The above contention of appellant is accordingly over-
ruled.

V. We adhere to the ruling heretofore made, to the
effect, that subsequent acts of alleged statutory rape,
are incompetent as evidence and should be ex-
cluded. [State v. Harris, 283 Mo. 99; State
v. Johnson, 225 S. W. (Mo.) l. c. 964-5 and
State v. Palmberg, 199 Mo. 233.]

*Evidence of Subsequent Assaults.*

VI. It is insisted that error was committed in per-
mitting the prosecutrix, over the objection of defendant,
to testify that he had sexual intercourse with her in June
and July, 1920, after she became fifteen
years of age. We have held in the
preceding paragraph, that evidence
tending to show subsequent acts of
sexual intercourse in a case of this character is inad-
missible.

*Fifteen Years of Age: Subsequent Assaults.*

It is suggested by the State that the above testi-
mony was elicited as a part of the cross-examination of
prosecutrix by counsel for appellant. The prosecutrix,

at the trial, testified that defendant had sexual inter-
course with her in June and July, 1919. She was asked
by counsel for appellant, on cross-examination, by way
of impeachment, if she had not testified before the grand
jury that defendant had had sexual intercourse with her
in June, 1920, and that this was the first act of intercourse
he ever had with her. Counsel for appellant did not ask
her if she actually had sexual intercourse with defendant
during the year 1920, nor was this a material issue in the
case, as shown by Instructions 19 to 23 inclusive, given
by the court. The real controversy was over the ques-
tion as to whether she committed perjury in testifying
before the grand jury that the first act of sexual inter-
course with defendant occurred in 1920, or whether she
committed perjury in testifying at the trial that defend-
ant had sexual intercourse with her in June and July,
1919. She evidently committed perjury before the grand
jury or at the trial. This was the subject of inquiry, and
not whether she actually had sexual intercourse with
the defendant in June, 1920. We are of the opinion that
error was committed in permitting the prosecutrix to
testify, that defendant had intercourse with her in June,
1920, after she had arrived at the age of fifteen years, as
no such issue had been tendered by defendant's counsel
in her cross-examination, nor was it within the purview of
the charges in the information.

VII. The testimony of the four young boys in re-
gard to their having had sexual intercourse with the
prosecutrix in 1920, was properly excluded by the court,
as her character could not be thus attacked
Delinquency
With Others. by showing specific acts of delinquency.
[State v. Osborne, 246 S. W. 879, and cases
cited; State v. Lasson, 292 Mo. 155; State v. Allen, 290
Mo. 258; State v. Gesell, 124 Mo. 531; State v. Rogers,
108 Mo. l. c. 204.]

VIII. Appellant complains of the court's action in
excluding that part of the cross-examination of prose-

**Motives for Changing Testimony.** cutrix, as to her knowledge, that the grand jury had failed to indict defendant at the time she made the fresh charges against him for sexual acts alleged to have occurred in 1919, and changed her testimony.

The Attorney-General confesses error in respect to the above ruling, and we are of the opinion that he has taken a correct view of the matter. The prosecutrix, shortly before appearing in the grand jury room, went to see defendant with the view of collecting $3,000 from him, but did not actually ask him for the money. She said she asked him to do something for her, and he declined to do so; that she then went before the grand jury, and tried to have him indicted for raping her in June, 1920. As she was then fifteen years of age, it became necessary for the grand jury to inquire as to her previous chaste character before returning an indictment. She swore positively before the grand jury that she never had sexual intercourse with defendant prior to June, 1920. What motive induced her to change front, and swear directly the opposite of that which she had sworn to before the grand jury? Had she learned, when the present action was commenced, that the grand jury refused to indict defendant on her testimony because she was over fifteen years of age, and failed to show a previous chaste character? Was she willing to change her testimony and swear to a different state of facts in order to pursue defendant under a different law? In our opinion the defendant had the legal right to inquire into the motives which induced the prosecutrix to change her testimony, and as to why she fled from home to prevent her deposition being taken after the present proceedings were commenced. The proposed cross-examination related to the merits of the controversy and was erroneously excluded.

IX. It is earnestly contended by counsel for appellant that on the facts disclosed by the record **Sufficient Evidence.** there is not sufficient evidence to sustain the conviction.

In State v. Goodale, 210 Mo. l. c. 282-3, GANTT, J., in discussing this subject, very appropriately said:

"The all-important question on this appeal is whether the testimony in this case is sufficient to sustain the conviction of the defendant. The admonition of Lord HALE, that 'it must be remembered that this is an accusation easily to be made and hard to be proved and harder to be defended by the party accused, though never so innocent,' must be heeded. While it is the law of this State, as in most others, where not modified by statute, that a conviction for rape may be sustained upon the uncorroborated evidence of the outraged female, it is nevertheless equally well settled that the appellate court will closely scrutinize the testimony upon which the conviction was obtained and if it appears incredible and too unsubstantial to make it the basis of a judgment, will reverse the judgment."

The defendant is presumed to be innocent of the offense charged against him, and this presumption attends him throughout the progress of the case until it has been overcome by evidence proving his guilt beyond a reasonable doubt. In addition to the foregoing, numerous witnesses testified as to defendant's general reputation for morality, etc., being good. On the other hand, no witness was offered to sustain the general reputation of the prosecutrix, for either morality or truthfulness. In the face of admitted perjury, there can be no presumption that her general reputation for truthfulness and veracity was good. Although a girl of unusual brightness, as disclosed by the record, and having advanced to the second year of the high school, when it came to expressing her conception of right and wrong, prosecutrix testified as follows:

"Q. Now, at the time you claim to have had these acts of sexual intercourse with Mr. Guye you thought it was all right, did you, perfectly right, nothing wrong about it? A. Yes, sir."

The formula in which the nine separate acts of sexual intercourse are described by prosecutrix in her testi-

mony, without any substantial corroborating circumstances to sustain her, bears upon its face the earmarks of having been specially prepared to meet the new charges which she intended to launch against defendant, after having been unsuccessful in indicting him on perjured testimony before the grand jury. There are few cases in the annals of criminal procedure which surpass this in disclosing such wanton and audacious perjury, as that which repeatedly characterized the cross-examination of prosecutrix in this case. The facts are fully set out heretofore, and need not be repeated here. The defendant in his testimony, both generally and specifically denied having had sexual intercourse with prosecutrix at any time. It is possible, that he may have been guilty of the offense charged, but the ends of justice require, that the State should produce more substantial testimony than that presented in this record to sustain a conviction. [State v. Brown, 209 Mo. l. c. 422; State v. Goodale, 210 Mo. l. c. 290; State v. Tevis, 234 Mo. l. c. 284; State v. Donnington, 246 Mo. 1 c. 356-7; State v. Johnson, 225 S. W. (Mo.) l. c. 964-5.]

In order that respondent, in a re-trial of the cause, may have an opportunity to produce additional evidence, if it has any, tending to show defendant's guilt, we reverse and remand the cause, to be proceeded with in conformity to the views heretofore expressed. *Higbee, C.,* concurs in the result.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.