STATE of Missouri, Respondent,

v.

Zebedee GARRETT, Appellant.

No. 57385.

Supreme Court of Missouri, Division No. 2.

May 14, 1973.

John C. Danforth, Atty. Gen., Daniel P. Card II, Asst. Atty. Gen., Jefferson City, for respondent.

Wilson Gray, St. Louis, for appellant.

MORGAN, Presiding Judge.

A jury found defendant guilty of forcible rape in violation of § 559.260, RSMo 1969, V.A.M.R., and assessed his punishment at twenty years confinement. He appealed prior to January 1, 1972, and appellate jurisdiction is in this court.

On appeal, defendant contends primarily that the evidence was not sufficient to sustain the conviction and judgment entered thereon. In this connection, it is our duty to view the evidence in the light most favorable to the state.

The record reflects that defendant and the prosecutrix were of the same race, close in age and residents of the same general area of St. Louis. She testified that her parents had moved from the city about a month prior to the alleged offense, and that she had rented an apartment at that time to finish her last year of college at an institution in the city. On the evening of May 28, 1971, she had a bachelorette party at her residence for a friend, scheduled to be married, and about fifteen girls attended. She was dressed in a sweat shirt and cut-off Levis. One friend planned to stay with her that night, and she walked with another to where the latter's car was parked a half block away on Kingshighway. It was then approximately 1:30 A.M. As she started to return she saw defendant standing in front of her residence. She paused to see what he was doing, and when he yelled "Hey you" she started to walk in the wrong direction. When he followed, she ran but was caught approximately another half block away. He grabbed her by the arm and asked why she was running. When she said to get away from him, "He told [her] to shut up and be quiet and you won't get hurt—just to come on." She described his tone of voice as menacing. As they entered an alley, she described their movement by saying "he was pulling" and "I was pulling back—just dragging." When they arrived at a gangway by a garage off the alley, he told her to remove her clothing. When she didn't, he grabbed her shoulder and forced her to the ground. He pulled the sweat shirt off over her head, unsnapped her jeans and told her to "get out of them." He then had intercourse with her. Her explanation for not striking or physically attacking him was, "I was under the impression that it wouldn't do any good." She further said, "I was always under the impression that people who got raped got beat up or killed or something . . . ." For that reason, she tried to avoid making defendant mad. After she was allowed to dress, she started one way and defendant another. However, a moment later: "He grabbed me by the arm. He said, 'Stop. I want to see what you look like'; and there was this light a little ways down the alley * * * he pulled me up under the light and he

looked at me for a long time. He was holding my arm * * * he said, 'I want to see what you look like in your panties, your underwear * * * I want to see what you look like', and then he started to spin me around just like little kids are playing, you know, Spin-the-Bottle, or something like that. He just kept spinning me around and looking at me." Finally, ". . . he said, 'O. K. we're going back' and I said, No, leave me alone, please * * * he said, 'No, come on' and he took me back to the same place." In the hope that she could get back to her friend, she tried to convince him to go to her apartment; but, "he told me to shut up * * * and he pushed me down on the ground again." After another act of intercourse, she was allowed to leave. Her friend, at the apartment, testified that when prosecutrix returned she was hysterical and said she had been raped. They called a friend, who immediately took her to a hospital where she arrived at 3:01 A. M. The examination confirmed that there had been intercourse, and spermatozoa was found on her clothing. She also had cuts and scratches on her back. Two days later she identified defendant in a lineup at a police station.

Defendant testified and denied having intercourse with the prosecutrix. He admitted his presence near her residence at the time, but explained that he was returning to his home from a church service several blocks away; that she [the victim] came running out of an alley crying and told him "her stepfather had just jumped on her"; that he had seen her at a grocery store and talked with her once while she was waiting on a bus; that he gave her $5.00 to take a taxi to a friend's home to get away; and, notwithstanding the existing emergency, they made a date to attend a movie the next evening.

In response, prosecutrix testified that the events related by defendant were false; that she had never seen him until the rape in question; and, that she never had a stepfather since her natural parents were alive and living together.

■ To establish the crime of rape, the essential elements of carnal knowledge by force against the will of the woman must be shown. State v. Deckard, Mo., 426 S.W.2d 88, 90 (1960); State v. Beck, Mo., 368 S.W.2d 490 (1963). Such issues are to be resolved by the jury, unless we must as a matter of law declare that the state's evidence was insufficient to sustain any one of the elements noted. State v. Bird, 358 Mo. 284, 214 S.W.2d 38 (1948).

■ First, we consider defendant's reliance on the fact that prosecutrix failed to make an "outcry" which might have brought a resident of the area or a passing motorist to her aid. She explained her failure to do so by the fact she had lived in the area only one month and was not acquainted, plus her expressed fear of violent physical harm if defendant became alarmed at such an outburst. Although an "outcry" for help is certainly indicative of an absence of consent and tends to establish that the intercourse was against the "will" of the woman, it is not a necessary essential to the proof of rape. As said in State v. Miller, 191 Mo. 587, 90 S.W. 767 (1905), at l.c. 775: ". . . the failure of such outcry is simply a fact tending to disprove the good faith of the charge, a circumstance only of more or less weight depending upon the surrounding circumstances, a failure to make it raises no presumption of law that the prosecutrix has sworn falsely; it is a circumstance to be weighed by the jury."

■ Second, in response to defendant's contention the punishment assessed was excessive, we repeat that: ". . . it is the jury's function to assess punishment, within statutory limits, subject to the trial court's discretionary power to reduce it, and to justify interference with a sentence upon appeal, passion and prejudice should so clearly appear from the record that the appellate court may confidently

say the trial court abused its discretion when it declined to reduce the allegedly excessive punishment." State v. Kirkpatrick, Mo., 428 S.W.2d 513, 517 [5–7] (1968).

 Although recognition must be given to the necessity that each case must turn on its own facts, a somewhat similar situation (in so far as the extent of resistance objectively shown is concerned) may be found in State v. Gray, Mo., 423 S.W.2d 776 (1968). Therein, it was concluded, l.c. 780 [1–3]: "There was evidence of threats of personal violence here which distinguishes appellant's cited case of State v. Amsden, Mo., 299 S.W.2d 498, 503, where that hypothesis in a given instruction was not only not supported by the evidence but directly contrary thereto. In State v. Beck, Mo., 368 S.W.2d 490, 493 [3], it was said, 'This court stated long ago that "the 'utmost resistance' doctrine does not apply where the woman is put in fear of personal violence, and her will thus overcome * *. 'A consent induced by fear of personal violence is not consent; and though a man lay no hands on a woman, yet if, by an array of physical force, he so overpowers her mind that she does not resist, he is guilty of rape by having unlawful intercourse.' (Citing authority and cases)." ' Whether Sharon voluntarily submitted to appellant or whether she made the utmost resistance and manifested the utmost reluctance to have sexual intercourse were jury issues under the aforesaid facts and circumstances. The further contention that '. . . The State failed to prove threats of force and violence from which the Prosecutrix could have apprehended fear of death or great bodily injury' is answered by the Beck case, supra, and the evidence of threats, pleading and fear testified to by Sharon justifies the submission of the issue of forcible rape to the jury, i.e., an array of physical force so that he overpowered her mind."

We cannot as a matter of law declare that the story of the prosecutrix was unworthy of belief under any reasonable view of the facts, and the state made a submissible case. The conflicting testimony presented a question of fact now resolved by the jury.

The judgment is affirmed.

HENLEY and DONNELLY, JJ., and LEVITT, Special Judge, concur.