STATE of Missouri, Plaintiff-Respondent,

v.

Richard Lee DAVIS, Defendant-Appellant.

No. 34787.

Missouri Court of Appeals,
St. Louis District,
Division 2.

June 26, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., J. Brendan Ryan, Circuit Atty., John D. Chancellor, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

Daniel W. Brown, St. Louis, for defendant-respondent.

GUNN, Judge.

Defendant, Richard Lee Davis, was tried and convicted by a jury of forcible rape under Section 559.260.[1] The trial judge assessed a penalty of eight years imprisonment under the Habitual Criminal Act, Section 556.280, and defendant has appealed to this court.

The issue to be decided by the court as raised by defendant is whether there was substantial evidence presented to the jury to support the conviction of the defendant.

On December 14, 1971, at approximately four p. m., defendant and his friend, David Stamm, drove to the home of the prosecutrix in Arnold, Missouri. Defendant, who was 19 years old at the time, and prosecutrix, who was 16 years old, had known each other for about four years and had dated for a period of time about a year prior to the December 14th meeting. The prosecutrix agreed to let defendant and Stamm take her shopping at the South County Shopping Center in St. Louis County but advised them that she could be gone for only about an hour. Defendant, prosecutrix and Stamm drove to the shopping center but did not stay there. Instead, they drove around South St. Louis County and, after stopping to pick up some beer, stopped to visit defendant's brother, Bill Davis, at a used car lot on Gravois Avenue in South St. Louis. At the car lot, prosecutrix and defendant argued over whether defendant was in love with the prosecutrix. Defendant, prosecutrix and Stamm left the used car lot and proceeded to the apartment of defendant's brother, Edward Davis, on McNair Avenue in South St. Louis. According to the prosecutrix, they arrived at the apartment at about 8:00 p. m. David Stamm remained in the car asleep while defendant and the prosecutrix entered Edward Davis' apartment. Bill Davis had already arrived at the apartment and stayed only for a few minutes before leaving. Edward Davis and a neighbor, Alice Lowery, were in the apartment with Alice Lowery's thirteen year old cousin. Stamm also entered the apartment briefly and returned to the car.

The apartment consisted of a kitchen, a living room, a bathroom and a bedroom directly off the living room. Defendant and prosecutrix went to the apartment kitchen where an argument between the two en-

---

1. All references to statutes are to RSMo 1969, V.A.M.S.

sued. Prosecutrix rejected defendant's offer of marriage, and defendant became agitated and procured a pistol from the living room, held the gun to prosecutrix' head and pulled the trigger three times causing the trigger to click but not discharge. Defendant took the prosecutrix to the bedroom, which was visible from the front room, where defendant's assertions of love for prosecutrix continued while he held the pistol in his hand. While prosecutrix continued to request to be taken home, defendant, holding the pistol in one hand, grabbed prosecutrix by the throat and told her that he would take her home ". . . but not until I have finished doing something I have wanted to do for a long time." While prosecutrix protested, defendant threw her down on the bed and demanded that she take off her clothes. When she refused, defendant undressed himself and prosecutrix. The prosecutrix refused defendant's demands to have sexual intercourse with him, and he struck her on the ear with the pistol causing her to scream. The prosecutrix testified that she then participated in acts of sodomy and sexual intercourse with defendant only because she believed her life to be in danger. The prosecutrix also testified that after the incident, she made no further outcry and saw no one in the apartment; that she was taken directly home by defendant and Stamm about 10:00 p. m.; that she did not mention anything to Stamm about the incident. Her mother and father testified that when the prosecutrix came home, she was hysterical, was bleeding from a laceration on her ear and had bruises on her neck. They further testified that she stated that she had been raped by the defendant. The Police were notified and prosecutrix was immediately taken to Firmin Desloge Hospital where a physician examined her and found that there was a laceration on her ear, bruises on her throat and the presence of spermatozoa in her vaginal tract.

The defendant was arrested four days later at the home of a girlfriend. After first denying ever having sexual relations with the prosecutrix, the defendant stated to police that he had had sexual intercourse with her and committed an act of sodomy upon her but without force.

The defendant testified that he had not engaged in any improper relations with the prosecutrix. He further testified that he and David Stamm drove the prosecutrix from his brother's apartment to a drive-in restaurant at about 8:30 p. m.; that the prosecutrix got into another car with two people and left the drive-in; that he did not see the prosecutrix again, although later that night he heard from his girlfriend that the Police were looking for him for the rape of the prosecutrix. He denied that he had threatened or struck the prosecutrix. As reason for his statement to the Police that he had had sexual relations with the prosecutrix defendant testified he had been advised by Police that he would be freed if he were to admit that sexual activity had taken place but with the prosecutrix' consent. The arresting officers denied making any such suggestion to the defendant.

David Stamm testified that when defendant and prosecutrix emerged from Edward Davis' apartment, the prosecutrix made no complaint to him about defendant's conduct. He corroborated defendant's testimony that the three went to a drive-in restaurant where the prosecutrix left Stamm and defendant and got into another car with two other people.

Edward Davis and Alice Lowery testified that they saw no sexual activity involving defendant and prosecutrix although the bed in the bedroom was visible to them at all times. They also stated that they heard no outcry from the prosecutrix at any time.

Defendant urges that the trial court erred in failing to sustain his motion for judgment of acquittal at the close of the State's case, because the prosecutrix' testimony was uncorroborated, incredulous and totally impeached, particularly in view of the fact that she made no outcry at the

time of the gun and sex incidents about which she testified.

■ In determining the sufficiency of the evidence to support a conviction, it is the court's duty to view the evidence in the light most favorable to the State, to accept all substantial evidence and all legitimate inferences fairly deducible therefrom which tend to support the verdict and to reject contrary and contradictory evidence. State v. Petrechko, 486 S.W.2d 217, 218 (Mo.1972); State v. Lee, 492 S.W.2d 28, 30 (Mo.App.1973).

■ The trial court did not err in failing to sustain defendant's motion for judgment of acquittal. The law pertaining to defendant's argument is clear, consistent and abundant. It also refutes defendant's position. First, a conviction of rape may be sustained by the uncorroborated evidence of the prosecutrix. State v. Gray, 423 S.W.2d 776 (Mo.1968); State v. Quinn, 405 S.W.2d 895 (Mo.1966); State v. Baugh, 323 S.W.2d 685 (Mo. banc 1959). However, in this case there was corroborating evidence supplied by the attending physician and prosecutrix' parents that a sexual assault had been made upon the prosecutrix.

■ Second, the question of whether the testimony of the prosecutrix was incredulous is a matter for the jury's consideration. Resolution of conflicts of evidence and determination of the credibility of the witnesses are jury matters and this court is to determine only whether there was substantial evidence to be believed by the jury which would sustain a guilty verdict. State v. Garrett, 494 S.W.2d 336 (Mo. filed May 4, 1973); State v. Talbert, 454 S.W.2d 1 (Mo.1970); State v. McMillian, 338 S.W.2d 838 (Mo.1960).

■ The prosecutrix' failure to make an outcry, even though the bedroom was visible to those in the adjoining room, does not raise a presumption against the veridicality of the prosecutrix' testimony or that she may have consented to intercourse with defendant. State v. Garrett, supra; State v. Baugh, supra. If there is evidence to support a reasonable finding that a forcible rape did occur, this court will not interfere with the jury's finding, and we find that there was ample evidence to support the jury's verdict. It is for the jury to determine whether or not the rape did occur and whether the prosecutrix submitted to the defendant's demand for intercourse out of fear, as consent induced by fear is not consent. State v. Kirkpatrick, 428 S.W.2d 513 (Mo.1968); State v. Gray, supra; State v. Wynn, 357 S.W.2d 936 (Mo.1962).

We cannot declare as a matter of law that the testimony of the prosecutrix is incredible or totally impeached. Any conflicting testimony was resolved by the jury's findings. State v. Garrett, supra.

The judgment is affirmed.

SMITH, P. J., and SIMEONE and KELLY, JJ., concur.