**STATE of Missouri, Respondent,**

v.

**Clifford HAWKINS, Appellant.**

**No. KCD 28050.**

Missouri Court of Appeals,
Kansas City District.

Nov. 29, 1976.

Motion for Rehearing and/or Transfer
Denied Dec. 23, 1976.

---

Robert E. Stewart, Philip C. Ehli, Kansas City, for appellant.

John C. Danforth, Atty. Gen., W. Mitchell Elliott, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

PRITCHARD, Chief Judge.

Appellant was convicted by the verdict of a jury of the commission of the crime of assault with intent to rape with malice aforethought. §§ 559.180, 559.190, RSMo 1969. In accordance with the verdict the trial court sentenced appellant to four years imprisonment in the Department of Corrections.

Paraphrased from appellant's lengthy points, his contentions for reversal are these: (1) The court erred in failing to suppress a lineup identification because his counsel and the court reporter were not permitted by an arresting officer to be present at the lineup at which the officer admitted making suggestions to the prosecutrix; (2) that the lineup was impermissibly suggestive because the officer in charge had alerted the prosecutrix that appellant had shaven and had his hair cut; (3) that the court erred in excluding Defendant's Exhibit F, a state's request for discovery, because it showed the crime was committed at 7:40 p. m., which would prove appellant's alibi defense inasmuch as prosecutrix's testimony was equivocal, as contended, as to time; (4) the court erred in refusing to instruct the jury on assault without malice and common assault where the trial court stated at the close of the state's evidence, that it would so instruct because the evidence supported the instruction; and (5) the court erred in refusing to direct a judgment of acquittal because the state did not make a submissible case of appellant's identity, the alleged weapon used, that the assault was with malice, alibi testimony was not disputed, and prosecutrix's testimony was imprecise and incredible as a matter of law, and was contrary to and in deviation of the amended information.

The prosecutrix testified: On the evening of September 13, 1974, at about 6:30, she

left the Job Training Center in Excelsior Springs, Missouri, where she lived, to go to the grocery store. It took her normally 5 to 10 minutes to walk to the store and another 10 to 15 minutes to make her purchases, but she was not sure of the time. She then went to the post office to purchase stamps, and as she left it a green station wagon with brown wood panelling sides pulled off to the side of the parking lot and its driver motioned her to the car. He told her he was lost and needed directions and inquired of her as to what there was to do in town, and where she was going. She told him she was going back home and he asked her to get in the car. She answered, "No, I had to get back", and he said in a demanding tone of voice, "Get in."

Prosecutrix described the driver, who said his name was "Cliff", as having light brown hair and a short beard, and he was wearing a T-shirt and a pair of jeans. At the time, the man was drinking a bottle of Michelob beer, and a like bottle, still moist and cool, was found about 20 feet from the scene of the crime by an investigating officer shortly after the crime was reported at 9:00 p. m. He drove for some time on the road to Prathersville, and then turned off on a dirt road, where he turned the car around and stopped, saying he had to go to the bathroom. He got out, went to the back of the car, then to her side, opened the door and told her to get out. She repeated an earlier request that he take her back home, but he told her to "get out", which she did. He took her to the other side of the car and when she tried to pull away, he pulled a knife which she described as not "very big" and "red-handled." The knife was identified by her and placed in evidence, it having been taken from appellant in a custodial search. After pulling the knife, the man told prosecutrix to take off her shirt and that he had used the knife before and was not afraid to do it again. She removed her clothes and he opened the back door of the car and told her to get in. She protested, and in an attempt to persuade him to leave her alone, told him she had venereal diseases. He said he did not believe her,

pushed her to the seat and told her to spread her legs apart. He exposed himself and as they struggled, he grabbed her arm, looked at her watch and told her to get dressed. She testified that she did not think she had sexual intercourse with him, but she was not sure. He took some change from her pants pocket, and as she walked over to get them, he hit her in the face. She turned to run, and fell or was tripped by him, and he stabbed her in the back, which later on treatment with a bruise and a cut on her mouth, proved to be a superficial puncture wound. He threw something in the weeds, got in the car and left.

The prosecutrix testified further that she had no idea of the then time of day, but it was "getting dusky." She thought that about 20 to 25 minutes had elapsed from the time they left the post office until the man drove away from the scene of the assault. After that prosecutrix went across a field to a house, which she could see had a light, and asked a lady if she could use the phone. She called Mr. Schulze at the Job Center, then talked to the Excelsior Springs Police Department. The time interval for these events does not appear.

Upon being shown some photographs within the next two weeks, prosecutrix was unable to make any identification. Later, she was shown three photographs and identified appellant as her assailant. In that photograph, appellant had a beard and his hair was about the same length as it was on September 13th. The following day she identified appellant from a lineup although he did not then have a beard and his hair was combed differently. Prosecutrix made an in-court identification of appellant as the driver of the car who picked her up at the post office and who was her assailant although his appearance was then different in that "He had a beard and his hair was a little bit longer." Sgt. Kenneth Gamblin testified that when he transported appellant to jail on September 27, 1974, he had a full beard and longer hair, and the next day, when he conducted the lineup, appellant was clean-shaven and appeared to have shorter hair.

Prior to the lineup Gamblin asked prosecutrix if she could identify her assailant regardless of what his appearance might be, "and she said she felt sure she could." He told her he had shaved, but did not remember whether he told her his hair was shorter, this latter fact being elicited on cross-examination.

The lineup was conducted on a Saturday *before* the information was filed the following Monday. Appellant's Point I contention arises from the fact that his counsel, although testifying that the lineup itself appeared to be proper, was not allowed in the room where the prosecutrix was when she made the identification. This contention is ruled adversely to appellant under *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), where, settling the controversy as to the law from various jurisdictions, it was held that the constitutional right to counsel does not attach until criminal proceedings are instituted as by way of indictment of a grand jury, or by information. See also *Morris v. State,* 532 S.W.2d 455, 456[1] (Mo. banc 1976), in which *Arnold v. State,* 484 S.W.2d 248 (Mo. 1972), here relied on by appellant, was at page 458 of *Morris,* held to be "in conflict with other decisions of this court, which are consistent with the holding in the *Kirby* case on the question involved, and that it should no longer be accepted as reflecting the law in this state."

As to appellant's Point II, the conduct of the lineup was not unduly suggestive so as to create a "substantial likelihood of irreparable misidentification" under *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). All that transpired was that Gamblin asked prosecutrix if she could identify her assailant regardless of what his appearance might be, and it was elicited on cross-examination that he told her that the man had shaved. Under these facts, even if there was a suggestion of identification, evidence was admissible of the "totality of the circumstances" [*State v. Davis,* 529 S.W.2d 10, 13[1] (Mo.App.1975); *State v.*

*Parker,* 458 S.W.2d 241, 243 (Mo.1970)], to determine if the in-court identification of appellant by prosecutrix had a source independent of the lineup. Here, prosecutrix had opportunity to observe appellant for some 25 minutes after he picked her up at the post office, and was riding in the car with him, it being then not quite dark. Shortly thereafter, she gave a complete, accurate description of her assailant to the police. She did not equivocate in picking appellant from photographs.. Both that identification and the lineup occurred within two weeks of the commission of the crime. These facts remove any supposed taint of the lineup identification and of course constitute an independent basis for the in-court identification. *State v. Carter,* 478 S.W.2d 358, 361[3] (Mo.1972); *State v. Davis,* supra, loc. cit., 529 S.W.2d 14[5]. Point II is overruled.

Appellant testified that on the day in question, he got off work at Avsco Plastics in Excelsior Springs at 4:00 p. m., and a fellow-worker took him to Thriftway parking lot to pick up his car, a green Chrysler station wagon, it being then 7 to 10 after 4:00. He then went to his parents out about 5 miles, consuming about 20 minutes at the most, stayed there awhile talking to his father, running some errands including trying to borrow an electric sander and washing his brother's car, arriving back at his father's home about 6:00 p. m., and leaving there a little after 7:00, to go to Thriftway to pick up his wife, arriving about 7:15. He parked, awaiting his wife to get off work which she did at 8:00 p. m., "or about five after." They drove toward the babysitter to pick up their child, and appellant's wife remembered she had forgotten something, so they went back to a Ben Franklin store near Thriftway to get it. They finally arrived at the babysitter's at about 8:45, and stayed there about an hour or an hour and fifteen minutes.

Donald Riley, a student-employee of Thriftway on September 13, 1975, testified he saw appellant sitting in the parking lot at about 7:30 p. m. that day. Christie Monks, also an employee of Thriftway, saw

appellant about 7:30 p. m. in the parking lot, and testified that his wife could not get off that early. Nita M. Duncan testified that she saw appellant in the Thriftway parking lot about 7:29 p. m., according to the store clock. Appellant's brother testified that appellant was at and around his parents' home from about 4:30 p. m. until about 6:30 p. m., when he left to pick up his wife at work. Appellant's mother encountered him at the city limits of Excelsior Springs as she was going home from work 5 minutes one way or the other of 7:00 p. m., on September 13th. Appellant was then on his way to pick up his wife at Thriftway.

■ It is appellant's contention under Point III that inasmuch as the state's request that he disclose alibi information precisely stated the time of the alleged offense to be 7:40 p. m., on September 13, 1975, and that prosecutrix's testimony on cross-examination was equivocal as to time, his Exhibit F, showing the time should have been admitted. Even assuming, but not deciding, that the state is bound, as a judicial admission, by its specification under Rule 25.-34(5), of the time of the offense as 7:40 p. m., an examination of the evidence presented by appellant (above) reveals that, if believed, he was not at the scene of the offense either before, during, or after it happened. [The credibility of appellant's alibi evidence was for the jury: *State v. Turnbough*, 497 S.W.2d 856 (Mo.App.1973); *State v. Watson*, 511 S.W.2d 890, 893[8] (Mo.App.1974).] On the other hand, prosecutrix testified that she left her abode at the Job Center at 6:30 p. m., walked up to 10 minutes to the grocery store, spent up to 15 minutes shopping, went to the post office (time elapse not stated precisely—"just there a few minutes"), then got into the car with appellant and drove about 25 minutes to the scene of the offense. Even without the time spent at the post office, this would place the time of arrival at the scene of the offense at about 7:20 p. m. Relative to times, prosecutrix reaffirmed on cross-examination her direct testimony that she left her home at 6:30 p. m., and that it took her 5 to 10 minutes to walk to the store. At one place she testified that she had no idea

how long she remained in the store, but later affirmed her direct testimony that it was 10 to 15 minutes; then she spent just a few minutes in the post office. As she left with appellant, he drove fairly slowly, she did not know how fast nor how many miles he drove, taking "maybe five, six, seven minutes. I'm not sure." (Her direct testimony was that he drove about 25 minutes.) This latter testimony is the only real conflict therein as to times, but it does not destroy the effect of prosecutrix's direct testimony. "The effects of conflicts or inconsistencies in any testimony are questions for the jury. *State v. Turnbough*, 497 S.W.2d 856, 858[5] (Mo.App.1973). The jury may believe all or none of the testimony of a witness, or may accept it in part or reject it in part, just as they may find it to be true or false when considered in relation to other testimony and the facts and circumstances of the case. (Citing cases.)." *State v. Berry*, 526 S.W.2d 92, 95[3–5] (Mo.App.1975). Although time may be the essence of an offense so as to require an instruction on the subject of alibi precisely setting forth the time of day (see Notes on Use, MAI–CR No. 12.50), appellant here has not demonstrated prejudice in the mere discrepancy of prosecutrix's testimony, where his own alibi evidence covered his whereabouts for some time before, during and after the stated time of the offense. Point III is overruled.

■ In appellant's Point IV, it is contended that the court erred in failing to give instructions on assault without malice and common assault. He argues, in effect, that the error was compounded when the court, the evening before submission of the case to the jury, indicated that instructions on these subjects should be prepared. The state, however, prepared only Instruction No. 4 on assault with malice. Here the evidence is that appellant drew a red-handled knife on prosecutrix, and "he told me that he had used the knife before and he wasn't afraid to use it again." He then ordered her to take off her clothes and attempted to rape her while still holding the knife on her. These facts supply the requisite malice to support the submission. Compare *State v. McCoy*, 530 S.W.2d 8 (Mo.

App.1975). The law is settled that instructions on lesser included offenses need not be given unless supported by the evidence in cases such as this (being not the same as homicide cases wherein all lesser offenses must now be instructed upon under MAI–CR). See *State v. Webb,* 518 S.W.2d 317, 321[4] (Mo.App.1975); *State v. Jackson,* 477 S.W.2d 47, 53[8] (Mo.1972); and *State v. Howell,* 524 S.W.2d 11, 21[10, 11] (Mo.banc 1975). Point IV is overruled.

Point V raises the issue of the submissibility of the state's case. It is clear from the recitation of the above facts that all elements of the charged offense were proved: Appellant threatened prosecutrix with a knife and held it on her while attempting to accomplish the rape. His identity was positively proved. The jury was, under the evidence, entitled to find that appellant assaulted prosecutrix with a deadly weapon with intent to ravish and carnally know her forcibly and against her will, by using such force as would at all hazards overcome her resistance. *State v. Comer,* 296 Mo. 1, 247 S.W. 179, 181[5] (1922); *State v. Williams,* 324 Mo. 179, 22 S.W.2d 649, 650[2] (1929). Point V is overruled.

The judgment is affirmed.

All concur.