**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Andrew Lee HARRIS,**
**Defendant-Appellant.**

**No. 39102.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

June 20, 1978.

Motion for Rehearing and/or Transfer
Denied Sept. 15, 1978.

Robert C. Babione, Public Defender, Blair K. Drazic, Asst. Public Defender, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Daniel F. Lyman, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Julian D. Cosentino, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Presiding Judge.

The defendant-appellant, Andrew Lee Harris, was found guilty by a jury of robbery in the first degree, § 560.120, RSMo. 1969 and was sentenced by the court to fifteen years imprisonment pursuant to the Second Offender Act, § 556.280, RSMo. 1969. Defendant appeals.

Because one of the points assigned as error alleges that the identification procedure used was fatally flawed, it will be necessary to describe the circumstances of the crime and the later identification confrontation in some detail. In so doing, all evidence and favorable inferences tending to support the verdict are taken as true. *State v. Harris*, 452 S.W.2d 577 (Mo.1970); *State v. Oldham*, 546 S.W.2d 766 (Mo.App. 1977).

A jury reasonably could have found the following.

At approximately 9:45 P.M. on the night of the crime, the victim, Isaac Guyton, was alone in his apartment. He allowed four people to enter: Doris Johnson, who was a friend of his, the appellant and two others. While the appellant brandished a knife at him, the victim was told by one of the four to lie on the floor. Shortly after that, a pillow case was placed over the victim's head and he was bound by a pair of suspenders. The victim, however, had an opportunity to view the appellant from a distance of about three feet for nearly two minutes before being restrained. The intruders proceeded to ransack the apartment and then departed. After their exit, the victim untied himself and looked out the front door. He saw one of the intruders putting some clothing into the car which then pulled away. Thereafter, the victim called the police who quickly arrived at the scene. The victim described the robbers, the goods taken and, with the greatest detail, the getaway car. A short time following, police officers stopped this car about a half mile from the scene. The appellant was in the front seat and Doris Johnson in the rear. Numerous articles taken from the victim's residence were also in the car. One of the officers questioned the four passengers, all

of whom were then arrested and taken to the station along with the goods.

Once at the police station, the four suspects and at least some of their spoils were placed in a room where the confrontation procedure later took place. There was testimony by the victim that the police summoned him with the words, "we got the man that robbed you." The police apparently made no attempt to find others in the station of similar appearance to the appellant or the other suspects. Consequently, the actual confrontation included only the four suspects. The confrontation procedure was conducted at about 10:55 P.M., a little more than an hour after the robbery occurred. The victim appeared and positively identified the appellant.

In this appeal, appellant alleges three points of error. In his first he contends that the trial court erred in overruling the motion to suppress the identification testimony of the State's witness, Isaac Guyton because the pre-trial confrontation procedure was so unnecessarily suggestive and conducive to irreparable mistaken identification as to be violative of the defendant's due process rights.

When an in-court identification is attacked on the ground that pretrial identification procedures violated due process, the inquiry extends first to a determination of whether the procedures were unduly suggestive, and if they were, whether there is an independent source of identification. State v. Barnes, 537 S.W.2d 576 (Mo.App. 1976). Proof of a source of identification independent of the confrontation itself is enough to overcome a claim of unnecessary suggestiveness in the identification procedure. State v. Jones, 528 S.W.2d 14 (Mo. App.1975).[1]

We turn first, therefore, to an examination of the procedure employed in this case. Appellant specifically points out three circumstances which he claims make the confrontation procedure suggestive: 1) Appellant was placed in a pretrial confrontation room with Doris Johnson whom the police already knew had been named by the victim as an accomplice. 2) Stolen property was on the table in front of the appellant. 3) The police summoned the victim saying that they had the robber.

We need not reach the question of whether these circumstances give rise to an unnecessarily suggestive confrontation procedure. It is enough to note that the procedures used by the police in this case were less than exemplary.

Even assuming, but not holding, that the procedures used were unnecessarily suggestive, if the facts of this case indicate that the identifying witness had a sufficient basis in fact for an independent basis of identification then the suggestiveness of the procedure is overcome and the testimony admissible. Jones, supra.

To aid in this determination of whether there exists an independent basis, the U.S. Supreme Court in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), reiterated that the factors to be considered include:

". . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199, 93 S.Ct. at 382.

In the adjudication of this rule, the Missouri Courts have adopted a threefold test, articulated somewhat differently, but of the same scope and intent as in Neil, supra. State v. Parker, 458 S.W.2d 241 (Mo.1970) stated that consideration be given to 1) the presence of an independent basis of identification, 2) the absence of any suggestive influence by others, and 3) positive courtroom identification.

1. Also see State v. Barnes, 535 S.W.2d 602 (Mo.App.1976); State v. Johnson, 539 S.W.2d 493 (Mo.App.1976); State v. Dancy, 541 S.W.2d 35 (Mo.App.1976); State v. McFadden, 530 S.W.2d 440 (Mo.App.1975); State v. Rutledge, 524 S.W.2d 449 (Mo.App.1975); State v. Johnson, 522 S.W.2d 106 (Mo.App.1975); State v. Ealey, 519 S.W.2d 314 (Mo.App.1975); State v. Green, 515 S.W.2d 197 (Mo.App.1974); State v. Hudson, 508 S.W.2d 707 (Mo.App.1974).

Tested both by the factors laid down in *Neil* and those articulated in *Parker*, we turn to the facts at hand. The record shows that the witness viewed the defendant in a well-lighted room at a very close range for several minutes apparently with a high degree of attention. The time elapsed between the incident and the confrontation was slightly longer than one hour. The witness was absolutely certain in his identification of the defendant at the confrontation. Furthermore, the witness testified that his recognition of the defendant was based on his "looks and features" and not on the basis of the articles on the table before him. Finally, at trial, the witness positively identified the defendant as the man who had robbed him.[2] Under these circumstances it is clear that there exists a sufficient basis for the identification independent of the arguably suggestive confrontation procedure. As such, there is little if any likelihood of misidentification. The trial court, therefore, did not err in admitting the identification testimony.

Appellant alleges as his second point of error that the trial court erred in overruling certain hearsay objections made by appellant's counsel during the direct testimony of two police officers. In each case, the officer on the stand was being questioned as to the replies he received from the occupants of the car concerning certain articles in the car. The statements contested as hearsay were, "[n]obody knew nothing about any of the property that was in the car, . . ." and "[e]verybody in the car denied ownership of the property."

Hearsay evidence is testimony in court of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. *Sabbath v. Marcella Cab Co.*, 536 S.W.2d 939 (Mo.App.1976); *Still v. Travelers Indemnity Co.*, 374 S.W.2d 95 (Mo.1963); *Bond v. Wabash R. Co.*, 363 S.W.2d 1 (Mo. 1962); *Mash v. Missouri Pacific R. Co.*, 341 S.W.2d 822 (Mo.1960); McCormick on Evidence, 2nd Ed. § 246. Tested by this definition, it is clear that the phrases spoken by the officers while on the stand were evidence of statements made out of court. The crucial inquiry, then, is whether the statements by the occupants of the car to the effect that they neither owned nor knew about the stolen items were indeed offered to prove the fact that they neither owned nor knew about those items. We conclude that it is unlikely that the State would introduce evidence which would tend to exculpate by negativing knowledge. It is clear from the record that the statements were not offered to show inferentially, as appellant contends, that since the others in the car denied ownership of the items, the property was in the defendant's possession. The replies to which the officer on the stand testified do not indicate that it was only the "others" who denied ownership or disclaimed knowledge but, on the contrary, that "everybody" denied ownership and "nobody" knew anything concerning the ownership of the property. The statements, therefore, were not introduced for the purpose of proving the truth of the matters asserted therein. As such, they were not hearsay and any objection on that ground was properly overruled by the trial court.

Appellant's third point claiming that the Missouri jury selection provision which excuses women from service upon request is violative of the equal protection clause of the Fourteenth Amendment is likewise without merit. It is apparently appellant's

2. In his brief, appellant emphasizes that the witness wavered somewhat in his in-court identification of the defendant. Examination of the record indicates that the in-court identification was not absolute. The victim noted that the defendant's appearance had changed and that he could not recognize him exactly. He did, however, correctly point out the defendant. It is not fatal that, by reason of defendant's change in appearance over a long lapse of time, the witness' in-court identification is less absolute than the one made more than two years earlier at the original confrontation procedure. It is sufficient here, especially in view of the other indicia of reliability, that the victim was able to point out the defendant in court as the man who took part in the robbery.

contention that the requirement that a petit jury be selected from a representative cross-section of the community, which is fundamental to the jury trial guaranteed by the Sixth and Fourteenth Amendments, was violated in the selection of the jury that found him guilty.

The constitutionality of a statute is considered in light of the party seeking to raise the question and of the particular application of the statute to him. A constitutional attack may not be made by one whose rights are not, or are not about to be adversely affected by the operation of the statute. *State v. Brown*, 502 S.W.2d 295 (Mo.1973) cert. denied 416 U.S. 973, 94 S.Ct. 1999, 40 L.Ed.2d 562; see also *Kansas City v. Douglas*, 473 S.W.2d 101 transferred to 483 S.W.2d 760 (Mo.1971); *State v. Toliver*, 544 S.W.2d 565 (Mo. banc 1976).

Appellant must allege, therefore, that he has been adversely affected by the application of the rule he challenges, i. e. that the Missouri jury selection process worked to compose a jury which, in this case, did not come from a representative cross-section by reason of the fact that women are excused upon request. The record in the instant case, however, shows the contrary to be true.

On the appellant's first jury panel of 18, 13 were women and on the second panel of 17, 12 were women. As a result, from a total of 35 potential jurors, 25 were women. It should also be noted that the jury finally sworn was comprised of 11 women and one man.

It is clear that defendant has failed to show that he was prejudiced by the operation of this statute. We hold, therefore, that he lacks standing to challenge its constitutionality.

Moreover, even if this selection process were found to be unconstitutional on the facts of another case, it is difficult to see how the defendant in the instant case was prejudiced by a jury selection panel which consisted of 25 women and 10 men.

The judgment is affirmed.

SNYDER, J., and ALDEN A. STOCKARD, Special Judge, concur.