**STATE of Missouri, Respondent,**

v.

**Leroy HARRIS, Jr., Appellant.**

**No. 61674.**

Supreme Court of Missouri,
En Banc.

July 14, 1981.

Rehearing Denied Sept. 8, 1981.

Gary Robbins, Public Defender, Melvin G. Franke, Sp. Asst. Public Defender, Jackson, for appellant.

John Ashcroft, Atty. Gen., Jan Bond, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Convicted of class B rape, § 556.030, RSMo 1978, defendant's punishment was assessed by the jury at seven years.

His contentions of error include (1) an attack on the validity of § 491.015, RSMo 1978,[1] popularly known as the rape shield statute, contending it is violative of various provisions of the United States and Missouri Constitutions and that the trial court improperly excluded certain evidence under the "invalid" statute. It is this challenge to the statute's constitutionality that brings the appeal to our Court under Art. V, § 3, Mo.Const. Defendant further complains the trial court erroneously (2) permitted the cause to go to the jury, as there was no corroboration of the victim's allegedly inconsistent testimony; (3) failed to instruct the jury on the offense of sexual abuse in the third degree, § 566.120, RSMo 1978; (4) admitted hearsay evidence; (5) limited cross-examination of the victim; and (6) refused to conduct a hearing as to the voluntariness of the victim's testimony.

The following evidence, supportive of the verdict, justified submission of the cause to the jury. On the cold blustery evening of March 2, 1979, the victim was home in Cape Girardeau with her three small daughters, ages two, three and six. Her home, closed because of the weather, was located on a dead end street, bordered by an open field on one side and an empty house on the other. The nearest occupied residence was that of a neighbor across the street.

Between 10:30 and 11:30 that evening, the victim heard a knock on her front door, and peering out through the curtains, saw a man she believed was her friend, Ben Stafford. Only after opening the door did she

1. § 491.015, RSMo 1978, is a statute designed by the legislature to provide certain testimonial protections to a rape victim by limiting interrogation as to her prior sexual conduct.

recognize it was defendant who had knocked. Stating he wanted to talk to her, defendant, without invitation, entered the victim's home, and once inside demanded they engage in sexual intercourse. She refused and spurned his persistent verbal advances. When he tried to place his hands on her, she removed them, and told him "in a nice way" to stop, then went to the kitchen and telephoned a friend, Lourine Amos. Lourine, learning that Harris was present, warned, "He'll rape you." To this, the victim replied, "No, he won't rape me," but Lourine again cautioned, "Yeah, he will." Hoping defendant would leave, the victim talked at length with Lourine, but he remained on the couch feigning sleep. Finally when Lourine hung up, the victim returned to the living room, turned off the television and told defendant to leave, stating "Leroy, I'm getting ready to put the kids to bed, so you go to go . . ." However, defendant stayed while the victim put her daughters to bed. Afterward, she again ordered defendant out, this time opening the front door and turning on the porch light, but defendant turned off the light and pressed her to re-enter the house. Becoming frightened, she again attempted to oust defendant, but this time he grabbed her wrist and dragged her through the house into a back room. During this struggle the victim feared her daughters might be harmed if they awakened, so she tried to avoid making noise. Further, she was fearful that if she fought defendant might kill her and the little girls. As she was dragged through the kitchen, the victim grabbed the phone and attempted to dial the operator, but defendant yanked her away and in so doing, tore the phone loose. Once in the back room, defendant shoved the victim down, ordered her to be quiet, pulled off her panties and sexually assaulted her. The victim testified she did not consent to sexual relations with defendant.

Afterward, defendant told her "he wanted to do it again because [she] had messed it up." When she declined, he asked if he could return the next day, and to induce

him to go, she responded, "Yeah; just leave." She also requested that he repair the phone line, which he did. After he left, the victim first called her friend, Lourine Amos, and immediately thereafter telephoned the police.

## I.

At the pretrial hearing on defendant's motion to dismiss the information or in the alternative, to introduce evidence of relevant sexual conduct, defendant made the following "Offers of Proof": [2]

*OFFER OF PROOF NO. 2:* Defense counsel stated that the victim's former boyfriend, Ben Stafford, would testify that, while dating, he once grabbed her, and she responded, "Oh, please don't rape me."

*OFFER OF PROOF NO. 3:* Defense counsel stated that during his cross-examination of the victim, he would elicit testimony that she was raped at age 10.

The Court indicated such evidence was inadmissible and objections to the offered proof would be sustained. This ruling, defendant contends, constitutes reversible error.

Offer of Proof No. 2 concerning the proposed testimony of witness Stafford was facially irrelevant and without more, clearly inadmissible. No time frame was suggested when the incident alleged might have occurred. It cannot be determined if this was many years earlier or perhaps at a time after the crime in question was committed. Nothing was advanced to connect the outcry, "Oh, please don't rape me", when grabbed by her boyfriend, to the issues at bar, nor to negate the proof of the crime charged. In sum, nothing appears demonstrating the pertinence of the proffered testimony, which flies in the face of the settled rule that when the relevance of proffered testimony is patently suspect, a further offer of proof with explication of the nexus is required. *See, State v. Rogers,* 578 S.W.2d 362, 367 (Mo.App.1979); *State v. Davis,* 515 S.W.2d 773, 775–776 (Mo.App.

**2.** Other offers of proof by defendant were ruled admissible.

1974). In our review we must assume the party making an offer of proof stated it as fully and favorably as possible. *State v. Umfrees*, 433 S.W.2d 284, 286 (Mo.banc 1968). The trial court cannot be faulted for ruling that the irrelevant evidence be excluded, hence, defendant's contention of error as to Offer of Proof No. 2 is denied.[3]

■ It is argued that the alleged fact of the victim's rape at age 10, Offer of Proof No. 3, is relevant to the defense claim of her vindictiveness and resultant motive to fabricate a rape charge against defendant. While we are unable to learn from the transcript or briefs the victim's present age, we do know she is a woman with children, ages six, three and two. However, the circuit court judge, from his trial observations, could sufficiently estimate the temporal proximity (or lack thereof) to justify the ruling. It is fatal to defendant's contention that no other attempt was made to show the relevance of this alleged incident apparently occurring many years prior to the crime at bar. The trial court properly ruled that the proposed evidence fell beyond "the permissible range of interrogation" and though the court considered the offered evidence barred by the statute, it cannot be said the ruling was erroneous. The rationale supporting the trial court's ruling on Offer of Proof No. 2, previously discussed, is also pertinent and supports the action rejecting Offer of Proof No. 3.

Defendant further contends that a part of this Offer of Proof included statements that the victim "has ill feelings towards men in general" and this feeling manifested itself if she felt they had "wronged her in some manner." As to this aspect, the court indicated that although the mention of the alleged rape at age 10 would be excluded, the statute [the ostensible basis for that

ruling] did not preclude proof concerning attitudes, stating "I don't think attitudes, as I understand it, equates with sexual conduct other than in the figment of one's imagination." Thus, the only portion of Offer of Proof No. 3 which was excluded and could serve as a basis for claim of error was the testimony concerning the victim's rape at age 10. Defendant's contention of error as to Offer of Proof No. 3 is denied.

## II.

Defendant next asserts the trial court erred in failing to sustain his motion for judgment of acquittal because the victim's testimony was uncorroborated. Implicit in his argument is the state's alleged failure to make a submissible case. Defendant points to inconsistencies within the victim's testimony, the victim's extrajudicial admissions to defense counsel and his investigator, and the victim's out of court statements to others, all allegedly inconsistent with verdict and demonstrating no rape occurred.

■ The uncorroborated testimony of the rape victim was sufficient to sustain a conviction, and any uncertainties therein were matters for the jury's resolution. *State v. Garrett*, 494 S.W.2d 336, 337–38 (Mo.1973), *State v. Davis*, 497 S.W.2d 204, 207 (Mo. App.1973). Corroboration is not mandated unless the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful. *State v. Wood*, 355 Mo. 1008, 1012, 199 S.W.2d 396, 398 (1947); *State v. Russell*, 581 S.W.2d 61, 66 (Mo.App. 1979).

■ In the instant case, the asserted inconsistencies as to *whether a rape occurred*

**3.** The trial court, denying the offer of proof, ruled it was rendered inadmissible by the provisions of § 491.015, RSMo 1978. To this defendant responds that the section violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. 10 and Sec. 18(a), and Art. III, Sec. 40 of the Missouri Constitution. However, we do not reach defendant's allegations of constitutional infirmity for, as noted above, the proffered testimony

was inadmissible because of its facial irrelevance. We are therefore able to dispose of the contention on grounds other than the constitutional challenge, *State v. Wilkinson*, 606 S.W.2d 632, 635 (Mo.banc 1980), and because the ruling of the trial court was justified, though for reasons other than that assigned, its action will be affirmed, *see, State v. Haynes*, 482 S.W.2d 444, 448 (Mo.1972); *Tollison v. State*, 556 S.W.2d 455, 457 (Mo.App.1977).

were in most part explained, and not fatal to the verdict when taken in context. On redirect examination, the victim disavowed certain of her extrajudicial statements, explaining that her religious teachings had persuasively influenced her to "suffer the wrong" and "let God handle it." According to church doctrines, she should refrain from prosecuting the rape, sharing in its blame. In addition, defense counsel's investigator had told the victim her reputation in the community was suffering, and he would inform her mother, an Arkansas resident, about the incident. These indoctrinations and threats arguably induced her statements (later disavowed) to defendant's attorney and investigator, indicating she had not in fact been raped. The victim admitted on cross-examination that some time before the rape she stated she would have sex with defendant "if [she] ever backslid." On redirect, she explained she "was telling Leroy a lie to get him out of my face." Defendant makes much of the fact that the victim failed to call the police when Lourine Amos warned that defendant would rape her. Obviously, the victim was not required to call the police then, for to that moment, defendant had neither assaulted her nor threatened the assault and in the past had been a friend. The victim could reasonably disbelieve Lourine's dire prediction until defendant began dragging her through the house. A few days after the rape, while talking on the telephone to defendant's sister, Ferntang Harris, the victim stated, "I raped your brother Leroy and he's going to take the blame." However, both the victim and Ferntang testified that their discussion was heated and the victim probably was not "talking sense." Additionally, the victim explained her anger had caused her to twist her words.

Contrary to defendant's assertions, the record is not rife with a conglomeration of raw inconsistencies explained only by the victim's perjury. Rather, the apparent incredulities must be considered against the backdrop of the entire record, including such facts as the victim calling the police almost immediately after the rape, which is corroborative of its occurrence. *State v.*

*Russell, supra* at 66. Further, such inconsistencies and the accompanying explanations went to the issue of credibility, a question for the jury. *State v. Garrett, supra.* As stated in *State v. Davis, supra,* "resolution of conflicts of evidence and determination of the credibility of witnesses are jury matters and this court is to determine only whether there was substantial evidence to be believed by the jury which would sustain a guilty verdict." *Id.* at 207. We conclude the victim's testimony was not so contrary to physical facts, common experience and surrounding circumstances as to render its validity doubtful, and there was sufficient evidence to have submitted the cause to the jury and support its verdict.

■ We note defendant's remaining points fail for want of preservation in that they were not mentioned in defendant's motion for new trial. An assertion of error not raised in the post-trial motion leaves an appellate court nothing to review, *State v. Peterson,* 518 S.W.2d 1, 3 (Mo.1974); *State v. Cook,* 491 S.W.2d 324, 325 (Mo.1973); *State v. Scott,* 487 S.W.2d 528, 530 (Mo. 1972), and will be examined only for plain error. Rule 29.12(b) (1980).

### III.

■ Defendant next asserts the trial court erred in failing to instruct, on its own motion, as to sexual abuse in the third degree, § 566.120, RSMo 1978, contending it is a necessarily lesser included offense of rape. Though defendant neither requested such instruction nor mentioned the issue in his motion for new trial, we recognize the duty of the trial court in non-homicide cases to properly instruct on any lesser included offense if supported by the evidence. *State v. Smith,* 592 S.W.2d 165 (Mo.banc 1979); *State v. Hawkins,* 544 S.W.2d 880, 885 (Mo. App.1976); *State v. Fleming,* 528 S.W.2d 513, 515 (Mo.App.1975). However, such an instruction is not required if the lesser offense is not necessarily included within the offense charged. *State v. Fleming, supra* at 515. To be a necessarily included offense it is essential that the greater offense in-

clude all of the legal and factual elements of the lesser. *State v. Smith, supra* at 166. As stated in *State v. Fleming, supra* at 515: "An instruction on a lesser offense is not proper unless it is impossible to commit the greater without first committing the lesser, for otherwise the lesser is not properly a lesser offense to the greater."

 Section 566.030, RSMo 1978, establishes these as the elements of rape: (1) sexual intercourse, (2) with another person to whom he is not married, (3) without that person's consent, (4) by use of forcible compulsion. § 566.120, RSMo 1978, proscribes the following conduct as sexual abuse in the third degree: (1) subjects to another person to whom he is not married, (2) to sexual contact, (3) without that person's consent. The distinguishing feature rendering sexual abuse other than a lesser offense of rape under § 566.030 is found in the difference between sexual intercourse and sexual contact. The former means "any penetration, however slight, of a female sex organ by the male sex organ, whether or not an emission results." § 566.010.1(1), RSMo 1978. Sexual contact is "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, *for the purpose of arousing or gratifying sexual desire of any person.*" (Emphasis added). § 566.-010.1(3), RSMo 1978. Thus, as well as proscribing conduct not punishable as rape, sexual abuse in the third degree requires a mental state, as shown in the italicized portion of the referenced statute, not necessary to conviction of rape. In rape, purpose and motive are irrelevant. As stated in *State v. Tompkins*, 277 S.W.2d 587 (Mo.1955), "If the evidence showed that there was carnal knowledge, force and the commission of the act, no intent is requisite other than that evidenced by the doing of the acts constituting the offense." *Id.* at 591. Accordingly, sexual abuse in the third degree is not a lesser included offense of the crime charged.

As it would have been error to have instructed down as defendant now requests, *State v. Elliott*, 559 S.W.2d 175, 177 (Mo.

banc 1977), it goes without saying no plain error occurred.

## IV.

Defendant next complains of the trial court's admitting the victim's testimony as to Lourine Amos' statements, "He'll rape you" and "Yeah, he will," urging that such statements constituted hearsay and their admission was violative of his right of confrontation.

 Hearsay evidence is in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant. *State v. Walker*, 484 S.W.2d 284, 287 (Mo. 1972); *State v. Harris*, 571 S.W.2d 443, 446 (Mo.App.1978). Contrary to defendant's assertions, Lourine Amos' statements were not offered to prove the truth of *the matters asserted therein*, that defendant was in fact a rapist. Instead, their relevance lay in demonstrating the victim's fearful state of mind and explaining any apparent acquiescence on her part. *State v. Walker, Id.* Hence, the statements were not inadmissible as hearsay.

Additionally, the underlying rationale for the hearsay rule is that "for the purpose of securing trustworthiness of testimonial assertions, and of affording the opportunity to test the credit of the witness, such assertions are to be made in court, subject to cross-examination." *State v. Chernick*, 280 S.W.2d 56, 60 (Mo.1955). No violation of this principle appears, as the declarant, Lourine Amos, testified on behalf of defendant. *State v. Berry*, 609 S.W.2d 948, 954, n.7 (Mo.banc 1980); *State v. Robinson*, 484 S.W.2d 186, 189 (Mo.1972). Hence, defendant suffered no prejudice by the trial court's action in admitting the victim's testimony as to Lourine Amos' statements.

## V.

 Defendant further complains of the trial court's action in limiting his cross-examination of the victim. Specifically, defendant claims he should have been allowed

to pursue his lines of inquiry concerning: an alleged prior conversation between the victim and defendant wherein the victim consented to defendant's request they engage in sexual relations; a claim that the victim had a poor opinion of men in general; the victim's supposed desire to be baptized in a particular church, a charge that drinking caused her problems in that church, and a claim that she subsequently became angry at defendant; and an allegation that the police had told the victim she would not have to testify in court concerning the sexual attack. General objections by the State to these inquiries were sustained. We affirm the trial court's rulings for the reason (among others) defendant failed to make sufficient offers of proof. *See, State v. Panter*, 536 S.W.2d 481, 486 (Mo.App.1976).

Defendant's offer of proof of his alleged conversation with the victim failed to establish a time sequence pursuant to the trial court's request. A previous consent to engage in sexual relations became relevant only if reasonably contemporaneous with the crime. By not showing when the alleged conversation occurred, defendant failed to demonstrate its pertinence.

Additionally defendant failed to evince the relevancy of the other testimony he attempted to elicit from the victim, and because such relevance is not facially apparent, (See discussion, Point I, *supra*) an offer of proof in the trial court was necessary to demonstrate that quality. *State v. Rogers*, 578 S.W.2d 362, 367 (Mo.App.1979); *State v. Davis*, 515 S.W.2d 773, 775–76 (Mo.App. 1974). The relevance of the victim's opinion of men, her problems with the church, and what the police might have told her about testifying is not readily apparent, nor was it demonstrated to the trial court. Defendant may not present the purposes of his halted lines of inquiry initially on appeal

and simultaneously fault the trial court for failing to divine his rationale in propounding the questions. Additionally, defendant's claim of error does not fall within the ambit of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), (limitations on cross-examination rising to a level of denial of constitutional right of confrontation), when he has failed to propound a proper offer of proof. *State v. Tolliver*, 562 S.W.2d 714 (Mo.App.1978).

Finally, we note that answers to some of defendant's halted inquiries were permitted at other times during trial. Testimony was elicited concerning the victim's previous agreement to have sexual relations with defendant "if [she] ever backslid," and defense counsel was further permitted to ask several questions respecting the victim's opinion of men in general before the prosecutor's objection was sustained. Concerning the victim's alleged church-related problems, supposedly brought on by a spat with defendant's mother in 1978, no reversible error can be found in the court's ruling a want of connection to the rape in March, 1979. These circumstances, combined with the trial court's broad discretion in prescribing the extent and latitude of cross-examination, *see State v. Morgan*, 592 S.W.2d 796, 806 (Mo.banc 1980), vacated on other grounds, 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12, convince us no manifest injustice requiring reversal occurred in this connection.

## VI.

■■■■■ Finally, defendant faults the trial court for failing to conduct a hearing on the voluntariness of the victim's testimony. In this respect, he contends the victim's testimony was coerced by fear of losing her children or that she might be incarcerated if she did not testify.[4] Though he

---

4. Defendant asserts a transcript of the preliminary hearing "showed not only the heavy handed way the assistant prosecutor Mr. Cook threatened the complaining witness with going to jail if she didn't testify, but also the manner in which the associate circuit judge handled the matter which was to hold a hearing on the

voluntariness of her testimony." This transcript is not a part of the record on appeal. The appellant has the duty to file a complete transcript including all evidence necessary to determine all questions presented to the appellate court for review, Rules 28.18 and 81.12 (1979); *State ex rel. Baumann v. Quinn*, 337

cites no precedent for his proposition, defendant urges we direct a hearing be held to determine voluntariness of the victim's testimony in view of defendant's allegations of duress and coercion. We find no authority for such proceeding and are disinclined to introduce it to our law.

Defendant thoroughly cross-examined the victim concerning her fear of incarceration or losing her children if she refused to testify. The question of voluntariness goes to credibility, a matter for the jury's resolution. *State v. Longmeyer*, 566 S.W.2d 496, 499–500 (Mo.App.1978).

The judgment is affirmed.

DONNELLY, C. J., and MORGAN and HIGGINS, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

WELLIVER, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

SEILER, Judge, dissenting.

I respectfully dissent.

When a prosecutrix's evidence "is of a contradictory nature or, when applied to the admitted facts in the case, her testimony is not convincing and leaves the mind of the court clouded with doubts, [then] she must be corroborated or a judgment cannot be sustained." *State v. Baldwin*, 571 S.W.2d 236, 239 (Mo.1978). *See also State v. Phillips*, 585 S.W.2d 517 (Mo.App.1979); *State v. Burton*, 355 Mo. 467, 196 S.W.2d 621 (1946); *State v. Guye*, 299 Mo. 348, 252 S.W. 955 (1923); *State v. Goodale*, 210 Mo. 275, 109 S.W. 9 (1908).

The prosecutrix's testimony is replete with contradictions. To give a few notable examples: First, after defendant had entered the house and told prosecutrix, "I want some", and after he had put his hands on her and been told "in a nice way" to stop, prosecutrix left defendant, went into the kitchen, and telephoned a friend, Lourine Amos. During the conversation, Lourine told prosecutrix that defendant would rape her. Prosecutrix denied that he would and Lourine reiterated her opinion. Prosecutrix concluded their lengthy conversation by saying she was going to put her daughters to bed and wash her hair. These are not the concerns of a woman who is afraid a man is about to rape her.

Second, prosecutrix admitted at trial that she had told defense counsel prior to trial that no man could take her body unless she wanted him to, that she could fight and protect herself against a man. She also admitted she told defense counsel that defendant had not threatened her in any way and that she had offered no resistance.

Third, prosecutrix testified that defendant pulled her away from the phone until "it popped it loose", until "[i]t came apart." After the alleged rape, when she told him that he "done tore up [her] phone", defendant replied " 'Naw, I can put it back together', and that's what he did." This hardly sounds like the conversation one would expect between the alleged victim and the man who has raped her and caused her to fear for the lives of herself and her children, nor does it seem reasonable that a rapist would so readily provide the means for the victim to call the police.

Fourth, prosecutrix told defendant's sister, "I raped Leroy [defendant] and he's gonna take the blame." This statement was made *one day* after the alleged rape. This was before she claimed to have rejoined the church whose philosophy it was to "suffer the wrong." Neither had she then talked to defense counsel's investigator. With regard to the statement that prosecutrix raped defendant, it was not prosecutrix's explanation that she was probably not "talking sense." This is what someone else said.

S.W.2d 84, 86 (Mo.1960); *Jackson v. State*, 514 S.W.2d 532, 533–34 (Mo.1974); *State v. Thompkins*, 277 S.W.2d 587, 592 (Mo.1955); as defendant failed to provide a record of the preliminary hearing proceedings, we are unable to measure the prosecutor's conduct which defendant perceives as violative of ethical considerations.

Fifth, prosecutrix admitted that she had been told that if she did not testify she would go to jail. She admitted further that she was also told that if she did not testify, her children might be taken away. Prosecutrix admitted she told defense counsel prior to trial that she would say anything she had to, to keep from going to jail.

No man should have to serve a penitentiary sentence for rape based on the unsupported testimony of a witness who vacillated the way this witness did. The prosecutrix, generally in response to leading and suggestive questions put to her by the prosecutor, attempted various rationalizations of her contradictory statements and behavior. But she cannot corroborate herself. With no outside corroboration, it is difficult to say what happened. One's mind is truly "clouded with doubts." The uncertainty affects both critical issues: lack of consent and forcible compulsion. A case like this shows the wisdom of the requirement of corroboration, a doctrine which has been the law of Missouri at least as far back as 1908, *State v. Goodale, supra.* Corroboration is completely lacking here and for that reason the rape charge should never have been submitted to the jury.

Further, I would disagree with the principal opinion's finding that sexual abuse in the third degree is not a lesser-included offense of rape. "In rape," the principal opinion concludes, "purposes and motive are irrelevant." What the principal opinion is saying is that the element of sexual contact (defined in § 566.010.1(3), RSMo 1978)[1] is not included within the element of sexual intercourse (defined in § 566.010.1(1)) because the legislature found no need to require, as it did for sexual contact, that sexual intercourse be "for the purpose of arousing or gratifying sexual desire." It is, however, understandable that the legislature did not expressly so require. It was entirely unnecessary. The "purpose and motive" of sexual desire are already there. It is not that sexual desire or arousal are "irrelevant" to the crime of rape; they are an inescapable part of rape, whereas in the

case of a "touching" (§ 566.010.1(3)) which is not sexual intercourse, it is possible that such "purpose and motive" are not present.

To say that the sexual intercourse required for rape does not carry with it the element of being "for the purpose of arousing or gratifying sexual desire" of the man ignores what every normal man knows accompanies the anatomical prerequisite for penetration. The arousal or gratification of sexual desire is a part of sexual intercourse just as food is part of a meal. Sexual contact accompanies sexual intercourse. Thus, the act of rape necessarily includes "sexual contact" as a part of "sexual intercourse" and hence the instruction on sexual abuse in the third degree should have been given. The *latter* crime is established by proof of sexual intercourse (which certainly is sexual contact) without the consent of prosecutrix. These elements are part of the proof required for rape and, under § 556.-046.1(1), would make sexual abuse in the third degree an included offense of rape. There was evidence to support the foregoing and, under the then in force Rule 20.02, now found in Rule 28.02(a), and § 546.-070(4), RSMo 1978, the court was required to give the instruction. It was reversible error not to do so. *State v. Smith*, 592 S.W.2d 165 (Mo.banc 1979).

BARDGETT, Judge, dissenting.

I dissent and concur in the dissent of Seiler, J., except for that part of the dissent which states that sexual abuse in the third degree should have been submitted as a lesser included offense of rape.

---

1. Unless otherwise indicated, all statutory citations are to RSMo 1978.